## JAMES CLARK *et al.*

*v.*

## JOSIAH POPE *et al.*

1. BUILDING CONTRACT—*waiver of right to certificate of architects.* Where a contract for the building of a church provides that the work shall be done in a good and workmanlike manner, to the satisfaction of the architects furnishing the plans and specifications, to be certified under their hands, the church committee are under no obligation to accept the building without such certificate, but this is a privilege which they may waive.

2. SAME—*responsibility of contractors for defects.* Where parties contracting to build a church, construct the same in a workmanlike manner, according to the plans referred to in the contract, or, in case of any material deviation, where it is made with the consent of the other party, they will be under no responsibility for its subsequent destruction, whether caused by its own inherent weakness in the mode of construction, or from the violence of storms.

3. SAME—*contractors become guarantors when they deviate from the working plans.* The contractors of a building have no right to depart from the working plans which are made a part of their contract, without consent, and if they do, they will become guarantors of the strength and safety of the building.

4. An express contract admits of no departure from its terms, unless by the mutual consent of the parties.

5. SAME—*contractor is not excused for not understanding plans.* The fact that a party has contracted to erect a building after certain plans, drawings and specifications, implies that he understands them, and the

law will not allow him to escape liability on the ground that he exercised ordinary care and skill to understand the same, and failed to comprehend them.

6. In such a case, where the work is to be done under the direction of an architect, if there is obscurity in the drawings and specifications, the contractors should apply to the architect for directions. If they rely on their own judgment, and a mistake occurs, they must bear the consequences.

APPEAL from the Circuit Court of La Salle county; the Hon. EDWIN S. LELAND, Judge, presiding.

This was an action of debt, brought by Josiah Pope and George Jekyl, against James Clark, John M. Holland and Louis P. Rugg, to recover the balance due on a contract for building a church.

The defendants pleaded *nil debet*, and special pleas setting up damages for defects in the work.

A trial was had, resulting in a verdict and judgment in favor of the plaintiffs for $414. The defendants moved for a new trial, which the court overruled.

Messrs. BUSHNELL & BULL, for the appellants.

Messrs. BLANCHARD & SILVER, for the appellees.

Mr. JUSTICE SCOTT delivered the opinion of the Court:

This action was brought to recover the balance alleged to be due for the erection of a church edifice. The contract was made with the appellants as a building committee on behalf of the First Congregational Society of the village of Utica.

Appellees insist, the work strictly within the contract was completed as early as December, 1870, or January following; that it was accepted by the society, and the basement room occupied for the purposes for which it was intended, without objections as to the manner in which the work had been done. It was not contemplated by the agreement,

9—70TH ILL.

appellees should complete the main audience room, situated on the upper floor. It had never been finished or occupied. In June following, the upper or main part of the building was blown down by a violent storm that passed over the village. The basement story retained its position, and was not much injured. No other building in the village was damaged except one that was crushed by the steeple of the church building falling upon it.

The contract between the parties obligated appellees to do the work in a good, substantial and workmanlike manner, to the satisfaction of the architects who had furnished the plans and specifications, "to be certified under the hands of Kinney and Adler." No writing or certificate under the hands of the architects was produced on the trial, but it was sought to avoid the force of this clause of the agreement by showing that the society had accepted the building without objection. This is one of the controverted points in the case. It is purely a question of fact, to be found by the jury, and it is perhaps not proper we should remark upon it at this time. The committee was under no obligations to accept the building until the builders had procured the writing or certificate of the architects. It was, however, a stipulation for their benefit, which they were at liberty to waive. If they had any doubts whether the work had been properly done, it was their privilege to insist the contractors should procure the certificate of the architects.

No complaints were made prior to the destruction of the building, the work had not been done in accordance with the terms of the contract. Since then it is insisted the upper story was not joined to the basement story in the manner indicated on the plans furnished by the architects. The contract is silent as to the manner the connection should be made, but the working plans and specifications are made a part of the agreement, and the controversy is, as to what they indicate.

Appellants claim, the plans required that the studding of the upper story should rest upon the studding of the

lower story; that the ends of the joists should rest upon a ribbon, and cover the point of connection between the studding of the upper and lower stories, and to be spiked to both.

The architects insist the building would have been much stronger, had it been constructed according to the plans furnished by them. As they explain it, the ribbon, which was to have been notched into the lower side of the joists, and extending clear around the building, would render it impossible for it to be swayed in either direction, without the whole structure going together. In the plans adopted by the contractors, it is insisted the lower story was not braced at all. Hence, it is contended there was but little to keep the upper part of the building from being blown off, except its own weight.

On the other hand, appellees contend the plans indicate that plates were to be placed upon the walls or top of the studding of the lower story, and spiked thereto; that the studding of the upper story was to rest upon these plates, toenailed thereto; the joists to rest on the plates, toenailed thereto, and spiked to the building. The latter plan was adopted by the builders as being in conformity with the specifications, and the building constructed accordingly.

There was a good deal of testimony offered by both parties as to what the plans did really require to be done in making the connection between the upper and basement stories. Much of it is flatly contradictory. The witnesses claim to be experts in their trade, and yet they differ widely in their explanations of the working plans made part of the written contract, and in their estimate of the relative strength of buildings constructed after either plan.

We are always reluctant to disturb the finding of a jury on a question of fact, and seldom do so if they have not been misled by the instructions, whatever may be our own views of the mere preponderance of the evidence. There must be a clear preponderance of the evidence, to warrant a reversal of the judgment for that reason. Under our practice, it is

the province of the jury, in civil causes, to find the facts, under the instructions of the court as to the law, and a respectful consideration should always be given to the verdict.

The controlling point in the case is, whether the building was constructed substantially after the plans furnished by the architects, or whether there was any marked departure, and if so, was it by the consent of the building committee?

When it shall be established the building was constructed in a workmanlike manner, after the plans furnished, or, if there was any material deviation, it was made with the knowledge and consent of the committee, there would be no responsibility resting on the contractors, no matter from what cause it was destroyed, whether from its own inherent weakness in the mode of construction, or from the extraordinary violence of the storm. Their undertaking was simply to do the work with reasonable skill, after the designs furnished by the architects. They were not guarantors as to the strength of the edifice when finished, or its capacity to withstand the violence of the winds.

These were the controverted questions in the case, and in view of the fact there was a sharp conflict in the testimony bearing on them, we think the second and fourth instructions given for appellees may have misled the jury.

In the second charge, the jury were told if appellees "departed slightly from the plans, specifications and drawings, yet, if such departure did not diminish the strength or value of the building, nor contribute to its being blown down, that such departure does not deprive them of their right to recover in this action, if the contract appears, by the evidence, to have been otherwise complied with."

The position assumed is untenable. The contractors had no right to depart from the working plans made part of the contract. If they did so, it was at their peril, and they would become guarantors as to the strength and safety of the structure. The parties contracted to have it erected after certain plans and specifications. This they were clearly entitled

to have done. The drawings were made part of the agreement.

The contractors could only discharge themselves from liability, by constructing the building in accordance therewith, unless a deviation was mutually agreed upon.

But the objection to the fourth instruction is still more manifest. It asserts the principle, if the contractors "exercised ordinary care, diligence and skill" in the endeavor to comprehend the drawing, and erect the church structure in accordance therewith, that if they failed in some respects, and such failure arose from the imperfections of the plans that would have misled a mechanic of ordinary care and skill, then they are not at fault, for that cause, if the work was done in a good and workmanlike manner.

This is not a correct construction of the contract. The agreement is, they shall perform the work to the "satisfaction, and under the direction," of the architects. An express contract admits of no departure from its terms, unless by the consent of the party to be affected. Undoubtedly, the mechanic is only bound to exercise ordinary care and skill in doing his work, but that principle can have no application whatever to his knowledge of the working plans and specifications. The fact he has contracted to construct a building after certain plans, drawings and specifications, implies that he does understand them. The undertaking itself is upon the condition that he has that skill that will enable him to comprehend them, and the law will not permit him to escape liability on the ground he has exercised ordinary care and skill in that regard.

In the case at bar, if there was obscurity in the drawings and specifications, it was the duty of the contractors, under the agreement, to apply to the architects for "directions." If they chose to rely on their own skill, and a mistake occurred, they must bear the consequences. Considerations of public policy demand that contractors shall be held to a

high degree of care in this respect. Any other rule would be productive of mischievous results.

We have not deemed it necessary to remark upon all the instructions asked by appellants which the court refused to give. Upon another trial, it will, no doubt, be the pleasure of the court to give such of them as are compatible with the views expressed in this opinion.

It is insisted, the court erred in sustaining the demurrer to the fourth plea filed by appellants. It was a question of law whether the building committee entered into the contract on their own, or on behalf of the First Congregational Society. We think the court committed no error in construing it to be an individual contract, and hence the demurrer was properly sustained.

For the reasons indicated, the judgment will be reversed and the cause remanded.

*Judgment reversed.*