W. H. LYMAN CONSTRUCTION CO., Plaintiff-Appellant, *v.* THE VILLAGE OF GURNEE *et al.*, Defendants-Appellees.

Second District   No. 79-167

Opinion filed April 30, 1980.

Donald V. O'Brien, of O'Brien, Carey, McNamara, Scheuneman & Campbell, Ltd., of Chicago (LaDonna Loitz Churchro, of counsel), for appellant.

Donna R. Henderson, of Williams, Swanson & Henderson, and Julian Johnson, of Snyder, Clarke, Dalziel, Holmquist & Johnson, both of Waukegan, for appellees.

Mr. JUSTICE UNVERZAGT delivered the opinion of the court:

W. H. Lyman Construction Co. bid successfully on a sanitary sewer project advertised by the Village of Gurnee. Lyman's bid was computed on the basis of the plans and specifications prepared for the village by Baxter & Woodman. Baxter & Woodman also acted as supervising engineer on behalf of the village for the project. The amount of the contract entered into by Lyman and the village was $349,307.04. Following completion of the project, Lyman filed a complaint which was stricken on motions by both the village and Baxter & Woodman. A later amended complaint was filed by Lyman which alleged that the village had breached its contract with Lyman and its implied warranty of the accuracy and sufficiency of the plans and specifications, and that Baxter & Woodman acted negligently and breached its implied warranty of accuracy and sufficiency of the plans and specifications. As the result of these breaches by the village and Baxter & Woodman, Lyman alleged it was required to expend a significant amount over and above the stated amount of the contract and by its complaint sought damages in the amount of $675,000.

The village and Baxter & Woodman filed motions to strike and dismiss the amended complaint. Lyman responded to the motions, the court heard arguments of counsel, and Lyman's amended complaint was stricken for failure to state a cause of action against either the village or Baxter & Woodman for breach of contract, breach of implied warranty or negligence. Lyman filed a motion to reconsider which was denied after additional arguments of counsel. This appeal was then timely filed in order to determine whether the court improperly dismissed the complaint as to both defendants for failure to state a cause of action.

When Lyman began work on the project, a portion of which ran parallel for a distance with a length of the DesPlaines River, it was discovered that the sewer had to be constructed through subsurface soil that was for the most part water-bearing sand and silt, rather than clay as indicated by the soil boring logs shown on the plans. A high ground water table was also discovered, and this required that Lyman install numerous dewatering wells. Due to the high subsurface hydrostatic pressures, the manhole bases as designed were unable to be sealed by the means permitted in the plans and specifications. Lyman requested approval from Baxter & Woodman to use a sealing method which was prohibited by the plans, and Baxter & Woodman allegedly did not grant this approval for many months, causing delay in sealing the bases. The project was finally completed, was accepted by the village, and is functioning.

Lyman contends its complaint states a cause of action and in support of its contention argues that an owner—in this case the village—warrants as a matter of law the accuracy and sufficiency of the plans and specifications it supplies to the contractor, and that this implied warranty is not overcome by the general exculpatory clauses provided in the plans and specifications. Lyman further contends that a cause of action has been stated against the engineer in that Baxter & Woodman owed it a duty of care in both its design and administration of the project so as to avoid negligently causing extra expenses in the completion of a functioning project and that this duty of care is not negated by the inclusion of expulatory and admonitory language in the plans and specifications.

The village first argues that when plaintiff's complaint is stripped of mere conclusions and allegations which are directly contradicted by provisions of the contract or which negate the element of reasonable reliance necessary to a breach of warranty claim, no cause of action is stated. Secondly, the village distinguishes the cases cited by the plaintiff for the proposition that the village impliedly warrants the plans will enable the contractor to satisfactorily complete the project, and if faulty specifications delay completion of the project, the contractor is entitled to recover damages for the village's breach of its implied warranty. The village's third argument is that it would be contrary to public policy and

detrimental to the public interest to ignore provisions which are inserted into a contract for specific objectives and which outline the responsibility of a prospective bidder.

Baxter & Woodman also argues that when the complaint is stripped of allegations which contradict specific portions of the contract which was attached as an exhibit, no cause of action is stated. Further, Baxter & Woodman argues that contractors who depart from the plans made a part of the contract do so at their own peril.

This case lends itself to three main considerations: (1) Does the village impliedly warrant that the plans and specifications it requires the contractor to follow will enable it to produce the desired improvement? (2) Can the engineer who designs plans and specifications for the village be held responsible to the contractor in tort for delay occasioned by the faultiness of those plans and specifications and by its administration of the contract? (3) When plaintiff's complaint is stripped of allegations contrary to the provisions of the contract, is a cause of action stated?

■■ Considering the third point first, the contract which plaintiff and the village entered into was appended to the plaintiff's complaint as an exhibit. Cases cited by the village are persuasive for the proposition that facts set forth in an exhibit control over contrary allegations set forth in a complaint. (*DeVito v. Village of Elburn* (1962), 37 Ill. App. 2d 59; *Kuch & Watson, Inc. v. Woodman* (1975), 29 Ill. App. 3d 638.) This means that the allegations plaintiff set forth regarding the inaccurate soil-boring logs and the presence of the high ground water table requiring the installation of dewatering wells must be disregarded since they are in direct contradiction to several provisions of the contract wherein plaintiff assumed the risk of encountering adverse subsurface soil conditions which would require dewatering and other drainage measures.

■■ ■ It is well settled that a contractor cannot claim it is entitled to additional compensation simply because the task it has undertaken turns out to be more difficult due to weather conditions, the subsidence of the soil, etc. To find otherwise would be contrary to public policy and detrimental to the public interest. It is not unusual for municipalities and local government units to use contract forms and "Instructions to Bidders" which require the contractor to make an independent inspection of the work site, including subsurface conditions. There was nothing in the plans in the case at bar which might have indicated to the plaintiff that the soil-boring logs shown on the plans were meant to be specially relied upon so as to relieve the contractor of its contractual responsibility to inspect the site, including subsurface conditions. There are instances, however, where an agency seeking bids as low as possible will undertake to conduct soil borings on its own so that bidders may rely on them and need not include in their proposals additional amounts to cover the costs of

their own soil borings and the chance of encountering poor subsurface conditions. *Fattore Co. v. Metropolitan Sewerage Com.* (7th Cir. 1971), 454 F.2d 537, *cert. denied* (1972), 406 U.S. 921, 32 L. Ed. 2d 120, 92 S. Ct. 1779, and (7th Cir. 1974), 505 F.2d 1, is an example of a case wherein broad exculpatory clauses requiring the contractor to examine the site were held not to preclude the contractor from relying on the subsurface conditions indicated by the plans and specifications. This was because the agency supplying the specific information about the subsurface conditions in order to get lower bids was deemed to warrant their accuracy. The contract in *Fattore* also contained a "changed conditions" provision which is not evident in the case at bar. Since there is nothing to suggest in the case at bar that the Village of Gurnee was utilizing this type of bidding procedure, the boring logs in the instant case were entitled to no special reliability and did not relieve plaintiff of its duty to comply with the site inspection requirements, nor its duty to deal with adverse subsoil conditions and additional expenses encountered during construction due to plaintiff's failure to so inspect. Furthermore, the affirmative duty imposed by the contract on plaintiff to inspect the site, including subsurface conditions, would negate the element of plaintiff's reliance on the soil borings which would be a necessary element to prove misrepresentation on the part of Baxter & Woodman of the condition of the subsurface soil. This is true even though there is no privity of contract between plaintiff and Baxter & Woodman. Accordingly, we affirm the dismissal of the complaint as to both defendants insofar as the allegations therein related to subsurface conditions which plaintiff had a duty to inspect.

·If these were the only allegations plaintiff had made, the matter could be resolved fairly in favor of the defendants because the complaint would have been stripped of allegations which might conceivably have stated a cause of action. However, plaintiff has also alleged that the village required and included, and the engineer designed and included, in its plans and specifications a manhole base which, when constructed and sealed according to the plans, was inadequate to withstand the subsurface hydrostatic pressures so as to meet the allowable infiltration requirements set forth in the plans and specifications. The specific allegations read as follows:

> "8. That defendant, VILLAGE OF GURNEE, breached its contractual obligation to plaintiff and the implied warranty of accuracy and sufficiency of its plans and specifications in one or more of the following respects:
> * * *
> (c) Included and required in its plans and specifications the design of a manhole base which when constructed could not

withstand the hydrostatic sub-surface pressures and which could not be sealed by any of the methods permitted by the plans and specifications, but which in fact could only be brought within the allowable infiltration requirements of the specifications by methods forbidden by the said plans and specifications.

9. That defendant BAXTER & WOODMAN, INC., negligently and in breach of implied warranty of accuracy and sufficiency of its plans and specifications, did one or more of the following:

\* \* \*

(b) Designed and included in its plans and specifications a manhole base inadequate to withstand the existing sub-surface hydrostatic pressures as described in paragraph 8 hereof."

Plaintiff further alleged that when it sought approval from the engineer to seal the manhole bases in a manner originally forbidden by the contract but which, in truth, proved to be the only successful means, the engineer negligently withheld its approval for many months. This specific allegation reads as follows:

"(c) Negligently administered the performance of the contract by plaintiff in that it withheld approval for many months of plaintiff's proposed method of sealing the manhole bases, the only method which proved successful when it knew, or in the exercise of ordinary care ought to have known, that the said manhole bases could not be successfully sealed in any other fashion."

■ Do the allegations set forth in these three paragraphs state a cause of action against the defendants? Our examination of the record and briefs of counsel convinces us that plaintiff's complaint does state a cause of action as to these allegations only. We conclude that insofar as these three allegations are concerned, the complaint was improperly dismissed by the court below, and we reverse and remand.

■ Plaintiff's allegation regarding the village arises as the result of the contract between them. Plaintiff contends, and we agree, that when the village requires a contractor to perform the contract in accordance with plans and specifications supplied by the village, the village impliedly warrants that these plans and specifications will allow the contractor to successfully construct the improvements, thus allowing the contractor to fully perform its part of the contract. In main support of this proposition, plaintiff cites, inter alia, the case of United States v. Spearin (1918), 248 U.S. 132, 63 L. Ed. 166, 39 S. Ct. 59. Spearin contracted to build a dry dock at the Brooklyn Navy Yard in accordance with plans and specifications which had been prepared by the government. The site was intersected by a six-foot brick sewer, and it was necessary to divert and relocate a section thereof before the work of constructing the dry dock could begin. The plans and specifications provided that the contractor

should do the work, and prescribed the dimensions, material, and location of the section to be substituted. All the prescribed requirements were fully complied with by Spearin, and the substituted section was accepted by the government as satisfactory. About a year after the relocation of the six-foot sewer, there was a sudden downpour of rain coincident with a high tide. Internal pressure broke the six-foot sewer as so relocated at several places, and the excavation of the dry dock was flooded. It was discovered that there was a dam from five- to 5½-feet high in the seven-foot sewer, and that dam, by diverting to the six-foot sewer the greater part of the water, had caused the internal pressure which broke it. The dam was not shown either on the city's plan, nor on the government plans and blue prints, which were submitted to Spearin. The government officials did not know of the existence of the dam, but the sewers had from time to time overflowed, to the knowledge of these government officials and others. Spearin had not been notified of this fact, however. Before entering into the contract, Spearin had made a superficial examination of the premises, but he had made no special examination of the sewers nor special inquiry into the possibility of the work being flooded thereby. Spearin notified the government he would not resume operations unless the government either made good or assumed the responsibility for the damage that had already occurred, and either made such changes in the sewer system as would remove the danger, or assumed responsibility for the damage which might thereafter be occasioned by the insufficient capacity and the location and design of the existing sewers. The government insisted that the responsibility for remedying existing conditions rested with Spearin. The court, in holding the government responsible, reasoned in part:

> "* * * [I]f the contractor is bound to build according to plans and specifications prepared by the owner, the contractor will not be responsible for the consequences of defects in the plans and specifications. [Citations.]
>
> * * *
>
> But the insertion of the articles prescribing the character, dimensions, and location of the sewer imported a warranty that if the specifications were complied with, the sewer would be adequate. This implied warranty is not overcome by the general clauses requiring the contractor to examine the site, to check up the plans, and to assume responsibility for the work until completion and acceptance. The obligation to examine the site did not impose upon him the duty of making a diligent inquiry into the history of the locality, with a view to determining, at his peril, whether the sewer specifically prescribed by the government would prove adequate. The duty to check plans did not impose the

obligation to pass upon their adequacy to accomplish the purpose in view." 248 U.S. 132, 136-37, 63 L. Ed. 166, 169-70, 39 S. Ct. 59, 61.

The village attempts to factually distinguish this and other cases cited for this proposition by the plaintiff, citing, *inter alia, McKay Engineering & Construction Co. v. Sanitary District* (1952), 348 Ill. App. 89, and *Premier Electrical Construction Co. v. United States* (7th Cir. 1973), 473 F.2d 1372. These cases are distinguished, however, in that in neither case were the plans for the improvements shown to be defective, as in the case at bar. In *McKay*, the plaintiff alleged since he was required to follow the sanitary district plans, it impliedly warranted that no damage would occur to the sewer by virtue of flood waters entering the manholes. The court, however, declined to find such an implied warranty, holding that the plaintiff should have guarded against a hazard of which it should have been aware since the sewer paralleled the river. The *McKay* court found the cases cited by plaintiff in that cause in support of its implied warranty theory (*Spearin* was one) were inapposite because "in every instance the injury was occasioned by either a positive misrepresentation, a failure to disclose material facts * * *, or defective plans which circumstances compelled the contractor to follow." *McKay*, at 93.

In *Premier*, the contractor sued the government for additional costs he incurred when the access road to the construction site became a sea of mud during the spring thaw and he was forced to barge men and equipment to the site. The contractor in *Premier* cited in support of his case the *Spearin* case. The *Premier* court, however, declined to apply the precedent of *Spearin* to the facts in that case, stating at page 1374:

"Nor can we accept the plaintiff's argument that United States v. Spearin, 248 U.S. 132, 39 S. Ct. 59, 63 L. Ed. 166, authorizes recovery for breach of an 'implied warranty of specification suitability.' In *Spearin* the Court held extra costs resulting from the failure of a sewer built by the contractor in accordance with the government's specifications were the responsibility of the government because the specifications were defective.
* * *

In the case before us, the additional cost of barging men and material to the job site was not the consequence of any defect in the specifications; rather, as we interpret *Spearin*, such cost was caused by the unforeseen difficulties which the plaintiff encountered."

We feel these cases simply reinforce our perception that *Spearin* clearly stands for the proposition that when a contractor agrees to construct something for a village—or the government, or an owner—and he is required to follow plans and specifications supplied by the village

and those plans are faulty thereby requiring the contractor to incur additional costs, the village must reimburse the contractor for damages incurred because of the breach of the implied warranty that the plans will be sufficient. This implied warranty has been described as

"* * * akin to the condition implied in every construction contract that neither party will do anything to hinder the performance of the other party. [Citations.] If faulty specifications prevent or delay completion of the contract, the contractor is entitled to recover damages for the defendant's breach of its implied warranty." *Laburnum Construction Corp. v. United States* (G.I. 1963), 325 F.2d 451, 457.

*Poorvu v. United States* (Ct. Cl. 1970), 420 F.2d 993, and *Luria Brothers & Co. v. United States* (Ct. Cl. 1966), 369 F.2d 701, also support plaintiff's proposition that the underlying principle and reasoning of *Spearin* would apply to the instant case.

■■ ■ Not only is there a large body of Federal law which supports plaintiff's proposition in this respect, Illinois law is also supportive of and, in fact, predates the principle enunciated in *Spearin.* In *Clark v. Pope* (1873), 70 Ill. 128, it was established that a contractor who builds according to plans and specifications furnished to him and performs the job in a good and workmanlike manner is protected and such contractor will not be responsible for the consequences of defects in such plans and specifications. The village, in distinguishing the cases cited by the plaintiff in support of its contention that the owner warrants the accuracy and sufficiency of the plans and specifications, makes the untenable proposition that plaintiff failed to follow the plans and specifications and thereby subjected itself to liability. The village makes this contention despite the allegation made by plaintiff, which allegation is taken as true upon a motion to dismiss, that plaintiff sought and received approval from Baxter & Woodman, the village's supervising engineer, for permission to deviate from the plans in order to seal the manhole bases and complete the project. We cannot agree with the village's contention in this regard, since *Clark* clearly holds that the liability for defects in plans and specifications shifts from the owner to the contractor only if the contractor deviates from such plans without the consent of the owner. Baxter & Woodman, which offers the same untenable contention, was designated as the village's supervising engineer on the project and, as such, had authority to approve a modification of the plans. It is clear that the plaintiff's duty to build according to the plans and specifications in a good and workmanlike manner was not breached by deviating from the original plans when prior permission to do so was received from the village's supervising engineer.

Nor do we find that the following contract provision pointed out by

the village in its brief renders nugatory the plaintiff's allegation regarding the manhole base design:

"8. Infiltration Testing and Limits—In specifying the various types of pipe and joints which will be allowed and the methods of making same, the Engineer or Owner assumes no responsibility regarding the Contractor's ability to meet the infiltration limits as set forth, as it shall be the Contractor's sole responsibility to meet these infiltration limits and, if in the opinion of the Contractor, he cannot comply with the infiltration limits as set forth and still meet the specifications regarding the type of sewer pipe, the type of joints, or the method of making the joints, then the Contractor must indicate this in writing when submitting his proposal."

■■ We construe this provision as an impermissible attempt on the part of the village to shift the responsibility for the sufficiency and adequacy of the plans to the contractor, without providing the contractor the corresponding benefit of having something to say about the plans which he is strictly bound to follow. The contractor's duty is to perform his part of the contract in a workmanlike manner, not to evaluate the suitability of the specifications or, in the language of *Spearin*, "to pass upon their adequacy to accomplish the purpose in view." (248 U.S. 132, 137, 63 L. Ed. 166, 170, 39 S. Ct. 59, 61.) Under the contract, the contractor may not independently decide to use an adequate sealing method; nevertheless, this provision makes the contractor "solely responsible" for meeting the limits set forth in the specifications.

■■ Exculpatory clauses designed to relieve the party from his own or his servant's negligence or liability for damages are generally valid and will be enforced unless:

"(1) it would be against the settled public policy of the State to do so, or (2) there is something in the social relationship of the parties militating against upholding the agreement." *Jackson v. First National Bank* (1953), 415 Ill. 453, 460.

■■ "Public policy" of the State may be found in "its constitution and its statutes, * * * its judicial decisions and the constant practice of government officials." (*Schnackenberg v. Towle* (1954), 4 Ill. 2d 561, 565.) Although the provision in question appears to be part of a form contract, there is nothing in the record to indicate how prevalent the use of such a provision is. Widespread use of this provision might lead us to an examination of its conscionability which would include, of course, a consideration of the relative bargaining positions of the parties. That aside, we adhere to the view that it is the expressed public policy of the State that the party supplying the plans and specifications which the contractor is bound to follow is responsible for the consequences of the defects inherent therein absent any unconsented-to deviations therefrom

by the contractor. We believe this policy is evidenced by the judicial decisions of this State in cases such as *Clark v. Pope* (1873), 70 Ill. 128; *Georgetown Township High School District v. Hardy* (1976), 38 Ill. App. 3d 722; *St. Joseph Hospital v. Corbetta Construction Co.* (1974), 21 Ill. App. 3d 925; and *R. F. Conway Co. v. City of Chicago* (1916), 274 Ill. 369. We also note that the second reason for which exculpatory provisions may be held invalid—that something in the social relationship of the parties militates against enforcement of the provision—might also have applicability here. It is a usual practice for municipalities to seek competitive bids from private contractors for the construction of public improvements of all types. Relieving villages of the responsibility of the consequences of defects in plans and specifications which contractors are bound to follow would, we feel, give private contractors pause to consider the advisability of bidding on such municipal projects. The public interest would likely suffer seriously from such a state of affairs in the long run.

It is our conclusion that plaintiff's allegations regarding the manhole base design stated a cause of action against the village, and the cause is reversed and remanded for further proceedings.

■■ We likewise find plaintiff's complaint stated a cause of action against Baxter & Woodman insofar as it alleged negligence in Baxter & Woodman's design of the manhole base and its administration of the contract. Since Baxter & Woodman was not a party to the contract with plaintiff, and inasmuch as hereinabove we have discounted the effectiveness of the provision relating to the contractor's sole responsibility for meeting infiltration testing limits, we do not consider Baxter & Woodman's argument that the complaint fails to state a cause of action due to contrary provisions in the contract. Further, our discussion above concerning the village's untenable assertion regarding plaintiff's deviation from the plans by seeking an approval of a modification thereof applies equally as well to Baxter & Woodman's argument on this point. In support of its contention that the engineer owes a duty of due care to the contractor even though there is no privity of contract between them, plaintiff cites *Normoyle-Berg Associates v. Village of Deer Creek* (1976), 39 Ill. App. 3d 744. In *Normoyle-Berg*, the contractor charged the engineer in a negligence action for economic injury he sustained as the result of the engineer's failure to stake the project, to complete certain details of the plans, and to give timely responses to the contractor's request for instructions. The trial court dismissed the complaint; the appellate court reversed the dismissal. Factually, *Normoyle-Berg* is remarkably similar to the case at bar and the appellate court's finding and underlying reasoning is well stated at page 746:

"We conclude that a supervising engineer owes a duty to a

general contractor to avoid negligently causing extra expenses for the contractor in the completion of a construction project. A supervising engineer must be held to know that a general contractor will be involved in a project and will be directly affected by the conduct of the engineer. This relationship of supervising engineer and general contractor gives rise to a duty of care on the part of each party to the other. Such a duty exists even in the absence of a direct contractual relationship."

Baxter & Woodman have not challenged the plaintiff's application of this precedent to the case at bar. We see no reason to challenge it either, and consider it persuasive authority. Thus, Baxter & Woodman owed plaintiff a duty of care in its design and administration of the project. Plaintiff's complaint alleged a breach of that duty in that the manhole base could not be sealed as prescribed in the plans and was not adequate to withstand the subsurface hydrostatic pressures; further, that Baxter & Woodman unduly withheld the approval of the design modification which would have enabled plaintiff to complete the project in an expeditious manner, as the result of which plaintiff incurred economic injury.

We note that plaintiff has alleged it was in the exercise of due care at all times, thereby satisfying the requirement that the plaintiff in a negligence action also plead freedom from contributory negligence.

For the foregoing reasons, the dismissal of the complaint against the village as to the allegation of paragraph 8(c) and against the engineer, Baxter & Woodman, as to the allegations of paragraphs 9(b) and (c) is reversed and the cause remanded for further proceedings.

The judgment of the circuit court of Lake County is affirmed in part, reversed in part and remanded.

Affirmed in part; reversed in part and remanded.

LINDBERG and WOODWARD, JJ., concur.