WALTER E. OLDENBURG, d/b/a Walter E. Oldenburg Plastering Contractor, Plaintiff and Counterdefendant-Appellee, v. RALPH L. HAGEMANN, d/b/a Ralph's Lathing and Dry Wall, Defendant and Counterplaintiff and Third–Party Plaintiff-Appellant (Richard L. Johnson, d/b/a Richard L. Johnson Associates, Inc., Third–Party Defendant-Appellee).

Second District   No. 2—86—0660

Opinion filed July 13, 1987.—Rehearing denied September 17, 1987.

Bernard P. Reese, Jr., and William E. Gottfred, both of Reese & Reese, of Rockford, for appellant.

Donald L. Shriver, of Downey, Yalden, Shriver & Yalden, of Rockford, for appellee Walter E. Oldenburg.

Stephen R. Swofford and Lynn D. Dowd, both of Hinshaw, Culbertson, Moelmann, Hoban & Fuller, of Chicago, and John A. Sandberg, of Rockford, for appellee Richard L. Johnson.

JUSTICE HOPF delivered the opinion of the court:

Defendant, Ralph L. Hagemann, d/b/a Ralph's Lathing and Dry Wall (Hagemann), brings this appeal following the trial court's dismissal of count IV of his amended counterclaim against Walter E. Oldenburg, d/b/a Walter E. Oldenburg Plastering Contractor (Oldenburg), and count II of his third-party complaint against Richard L. Johnson, d/b/a Richard L. Johnson Associates, Inc. (Johnson).

On January 10, 1984, Oldenburg filed a complaint for breach of contract against Hagemann. On a periodic and regular basis Oldenburg and Hagemann had entered into various agreements in which they would bid and subcontract certain construction jobs in the northern Illinois and southern Wisconsin area. On or about May 5, 1982, Oldenburg bid and contracted to supply certain materials and labor for a construction project located at Fort Atkinson High School in Fort Atkinson, Wisconsin. Pursuant to an oral and written agreement with Oldenburg, Hagemann, as a subcontractor, was to supply certain materials and labor for the Fort Atkinson project. Oldenburg alleged in his complaint that Hagemann failed to complete the work as agreed, thereby causing Oldenburg to provide additional materials and labor to complete the construction job.

Hagemann filed a counterclaim against Oldenburg, alleging in

count III that Oldenburg had breached his agreement with Hagemann by not furnishing the proper or adequate plans and specifications upon which Hagemann relied to make his bid on the Fort Atkinson project. As a result, the ceiling tile used by Hagemann for the project was incorrect and needed to be torn down and replaced with a classification of tile more expensive than the tile which had been specified and approved and on which Hagemann had based his proposal. Hagemann sought damages for labor and material furnished, as well as for additional labor and materials, and for deprivation of payment brought about by Oldenburg's refusal to permit Hagemann to complete the job as agreed.

On March 17, 1986, count IV was added to Hagemann's counterclaim. In count IV Hagemann alleged that Oldenburg was negligent in failing to obtain a written bid for Hagemann, in failing to advise Hagemann that his bid was not in conformance with the addenda to the project and did not include certain work, in failing to conduct proper inspections, in failing to advise Hagemann that he was installing the wrong ceiling assemblies, and in failing to consult with the architect, Johnson, to determine if Hagemann's work complied with the specifications. Oldenburg moved the court to strike and dismiss count IV of the counterclaim. The court granted defendant's motion, finding that count IV sought recovery of a purely economic loss under a tort theory and therefore did not state a cause of action, that the count failed to allege a duty recognized in law, and that the count was barred by the statute of limitations.

Hagemann had also filed a third-party complaint against the architect Johnson on December 21, 1984, alleging that Johnson was the architect for the design of the plans and specifications for the Fort Atkinson project, that Johnson supervised the construction work at the project, that Hagemann presented to Johnson the type of ceiling tile to be installed by Hagemann, that this tile was approved by Johnson as proper, that subsequent to the installation of the tile, Oldenburg informed Hagemann that the ceiling tile was substandard and would have to be removed and replaced, that Johnson knew or should have known Hagemann was relying on Johnson's judgment and skill in selecting the proper ceiling tile, and that, therefore, if Hagemann was held liable to Oldenburg for the costs of removing and replacing the tile, Johnson should ultimately be held liable for those costs.

On March 17, 1986, Hagemann filed count II of the third-party complaint, alleging Johnson was negligent in approving the wrong ceiling tile, in failing to properly inspect Hagemann's work and to advise Hagemann that he was installing the wrong ceiling tile, and in

failing to see that Hagemann's bid conformed to the specifications. Johnson moved to dismiss both counts of the third-party complaint. The trial court granted Johnson's motion, finding that Hagemann conceded, during oral argument on the motion to dismiss, that contribution, as sought in count I, had no application to a contract action and that count II was barred by the statute of limitations and sought recovery of economic losses which were not recoverable in a tort action.

Hagemann appeals contending: (1) that count IV, the negligence count, of his amended counterclaim against Oldenburg states a valid cause of action; (2) that count IV of the amended counterclaim is not barred by the statute of limitations; (3) that the damages sought in count IV of the amended counterclaim are not economic damages barred by tort; (4) that count II of the third-party complaint against Johnson, the architect, is not barred by the statute of limitations; and (5) that the damages for economic loss sought in count II of the third-party complaint are recoverable in tort.

Count IV of Hagemann's amended counterclaim against Oldenburg alleges Oldenburg was negligent in failing to advise Hagemann that his bid was not in conformance with addenda to the Fort Atkinson project and in failing to properly inspect Hagemann's work and advise him that he was installing the wrong ceiling tile. In this court, Hagemann argues that Oldenburg, as the contractor who supplied Hagemann with the plans and specifications for the project, owed Hagemann a duty to inform Hagemann that his bid did not conform to the addenda to the specifications for the project and to inform Hagemann that he was installing the wrong materials. Hagemann maintains that Oldenburg's failure to do so amounted to a breach of duty resulting in damages to Hagemann. Conversely, Oldenburg contends that based on the contractual relationship between the parties, as admitted in both Oldenburg's complaint and Hagemann's counterclaim, no independent duty based in tort law existed, as any duty owed by Oldenburg to Hagemann would have to arise out of the parties' contractual relationship.

Hagemann relies on *Normoyle-Berg & Associates, Inc. v. Village of Deer Creek* (1976), 39 Ill. App. 3d 744, 350 N.E.2d 559, to support his negligence claim that due to the relationship between Oldenburg and Hagemann, Oldenburg owed a duty to Hagemann which Oldenburg breached. *Normoyle*, however, is distinguishable from the case at bar. In *Normoyle* a village had entered into separate contracts with an engineering firm and a contractor for the construction of a sewer system for the village. The engineering firm was to supervise the construction, while the contractor was to act as general contractor for

the project. There was no contract between the engineering firm and the contractor. The contractor filed a complaint, alleging in two of the counts that he had incurred expenses above those originally anticipated due to the negligent supervision of the project by the engineers. The engineers moved to dismiss the counts, alleging that the complaint sought to impose a duty on the engineers higher than that required by law and that the complaint failed to state a cause of action. The trial court granted the motion.

██ On appeal, the court held that the engineers owed a duty to the contractor, concluding that:

"A supervising engineer must be held to know that a general contractor will be involved in a project and will be directly affected by the conduct of the engineer. This relationship of supervising engineer and general contractor gives rise to a duty of care on the part of each party to the other. Such a duty exists *even in the absence of a direct contractual relationship.*" (Emphasis added.) (*Normoyle-Berg & Associates, Inc. v. Village of Deer Creek* (1976), 39 Ill. App. 3d 744, 746, 350 N.E.2d 559.)

We read the court's conclusion as meaning that had there been a contractual relationship between the parties, the duty of care would have arisen out of the parties' contract. Unlike *Normoyle,* however, the two parties in the instant case, Hagemann and Oldenburg, were directly connected by virtue of their oral and written agreements, which both parties admitted existed. Thus, any duty Oldenburg may have owed to Hagemann arose as a result of their direct contractual relationship, and, if that duty was breached, Hagemann's remedies would be contractual.

Hagemann also relies upon *W. H. Lyman Construction Co. v. Village of Gurnee* (1980), 84 Ill. App. 3d 28, 403 N.E.2d 1325, to show that a supplier of defective or faulty plans, such as Oldenburg, must reimburse a contractor for extra costs and damages incurred as a result of the contractor's building according to the plans and specifications supplied to him. In *Lyman,* the contractor for a sanitary sewer project brought suit against both the village, with which the contractor had a contract, and the supervising engineer for the project, with whom he had no contract, for the amount the contractor expended over and above the stated amount of his contract with the village. In his complaint, the contractor alleged that the village had breached its contract with him and its implied warranty of accuracy and sufficiency of the plans and specifications and that the engineering firm acted negligently and breached its implied warranty of accuracy and sufficiency of the plans and specifications.

This court's finding in favor of the contractor and against the village was based on the parties' contractual relationship. We found that when a village requires a contractor to perform a contract in accordance with plans and specifications supplied by the village, the village impliedly warrants that these plans and specifications will allow the contractor to fully perform its part of the contract. (*W. H. Lyman Construction Co. v. Village of Gurnee* (1980), 84 Ill. App. 3d 28, 34, 403 N.E.2d 1325.) If those plans are faulty, requiring the contractor to incur additional costs, the village must reimburse the contractor because of the breach of implied warranty that the plans would be sufficient. 84 Ill. App. 3d 28, 36-37, 403 N.E.2d 1325.

As to the contractor's negligence action against the engineering firm, this court, relying on the holding in *Normoyle-Berg & Associates, Inc. v. Village of Deer Creek* (1976), 39 Ill. App. 3d 744, 350 N.E.2d 559, concluded that although there was no contractual relationship between the contractor and the engineering firm, their relationship gave rise to a duty of care in the firm's design and administration of the project and that the breach of that duty caused the contractor to incur economic injury. (*W. H. Lyman Construction Co. v. Village of Gurnee* (1980), 84 Ill. App. 3d 28, 39-40, 403 N.E.2d 1325.) As in *Normoyle*, this portion of the decision in *Lyman* is also distinguishable from the instant case because in *Lyman* no contract existed between the contractor and the engineering firm, as existed between Oldenburg and Hagemann in the instant case, so as to permit recovery of losses on the basis of breach of contract. Moreover, we believe it is important that in *Lyman* we specifically based the contractor's recovery against the village on the fact that those parties had a contract which could not be completed due to the faulty specifications supplied by the village.

Here, as in *Lyman*, Hagemann maintains that Oldenburg acted negligently in supplying Hagemann with improper specifications and plans, thereby causing Hagemann to install the incorrect ceiling tile which then had to be torn down and replaced with more expensive tile than that which had been originally specified and approved for the Fort Atkinson project. However, the damages resulting from the faulty specifications occurred as a result of a breach of the oral and written agreements between Oldenburg and Hagemann regarding the type of ceiling tile to be used, and, thus, we believe Hagemann's recovery lies in contract and not in tort law.

Like the plaintiff in *Album Graphics, Inc. v. Beatrice Foods Co.* (1980), 87 Ill. App. 3d 338, 408 N.E.2d 1041, Hagemann asks us to recognize a cause of action in negligence for Oldenburg's failure to

perform duties which are essentially contractual duties and to allow Hagemann to seek damages that are essentially contract damages, thus asking this court to acknowledge the existence of a tort action for breach of contract. (See 87 Ill. App. 3d 338, 350, 408 N.E.2d 1041.) We will not accede to this request. As stated in *Album Graphics*, "[p]laintiff should have his remedy for breach of contract, but he should not be allowed to recover under tort law that which he may or may not be entitled to recover under the contract or under contract law." 87 Ill. App. 3d 338, 350, 408 N.E.2d 1041.

■ In the instant case, Hagemann's damage was to his "expectation interest" that he would successfully perform his part of the contract and that Oldenburg would not hinder that performance, thus permitting Hagemann to receive the full benefit of his bargain with Oldenburg. (See *Bates & Rogers Construction Corp. v. North Shore Sanitary District* (1984), 128 Ill. App. 3d 962, 975, 471 N.E.2d 915, *aff'd on other grounds* (1985), 109 Ill. 2d 225, 486 N.E.2d 902.) This expectation interest "is meant to be protected by the law of contract, since each party to a construction contract impliedly warrants not to do anything to hinder the performance of the other party." (128 Ill. App. 3d 962, 975, 471 N.E.2d 915.) If a court allows the parties to a contract to circumvent their contractual remedies by suing in tort, the ability of contracting parties to allocate and bargain for risk of loss will be destroyed and certainty in commercial transactions will be radically undermined. (*Black, Jackson & Simmons Insurance Brokerage, Inc. v. International Business Machines Corp.* (1982), 109 Ill. App. 3d 132, 134, 440 N.E.2d 282.) Here, where the parties had a contract, Hagemann's proper remedy was under the contract or contract law, and, therefore, the trial court did not err in finding that count IV of Hagemann's counterclaim, which was brought under tort law, did not state a valid cause of action.

Parenthetically, we note that Hagemann has alleged a breach of contract action in count III of his counterclaim against Oldenburg to recover the same damages sought under its negligence count, and, therefore, the trial court's dismissal of count IV did not leave Hagemann without an available remedy.

Because of our decision on this first issue, it is not necessary to review the two remaining issues pertaining to count IV of the counterclaim. Instead, we next address the contentions which are directed to count II of Hagemann's third-party complaint against the architect Johnson.

■ Hagemann first contends that count II, the negligence claim, of the third-party complaint against Johnson was properly before the

court and is not barred by the statute of limitations. In opposition, Johnson maintains that Hagemann's 1986 negligence claim expired in 1984 pursuant to the provisions of section 13—214(a) of the Code of Civil Procedure (Ill. Rev. Stat. 1983, ch. 110, par. 13—214(a)), which provides:

"Actions based upon tort, contract or otherwise against any person for an act or omission of such person in the design, planning, supervision, observation or management of construction, or construction of an improvement to real property shall be commenced within 2 years from the time the person bringing an action, or his or her privity, knew or should reasonably have known of such act or omission."

Johnson argues that as count II of Hagemann's third-party complaint was filed on March 17, 1986, and Johnson's allegedly negligent conduct occurred in 1982, Hagemann was barred by the statute of limitations from filing his negligence action. However, as Hagemann points out in his reply brief, no facts have been presented to this court to show when Hagemann "knew or should reasonably have known" of Johnson's negligence as required by section 13—214(a). The reference to 1982 in the allegations of count II relates only to the time when Johnson approved the ceiling tile. To the extent that a matter within a brief is not supported by the record, this court will disregard it (*Schroeder v. Meier-Templeton Associates, Inc.* (1984), 130 Ill. App. 3d 554, 558, 474 N.E.2d 744), and, therefore, we will not entertain this particular argument of Johnson's.

Johnson also maintains that the negligence action does not constitute a proper third-party action under section 2—406 of the Code of Civil Procedure (Ill. Rev. Stat. 1985, ch. 110, par. 2—406), does not constitute a proper amendment to a third-party complaint, and does not relate back to the date Hagemann filed his original third-party complaint as provided in section 2—616 of the Code of Civil Procedure (Ill. Rev. Stat. 1985, ch. 110, par. 2—616).

The portion of section 2—406 of the Code of Civil Procedure applicable to the case at bar permits a defendant to bring a third-party complaint against "a person not a party to the action who is or may be liable to him *** for all or part of the plaintiff's claim against him." (Ill. Rev. Stat. 1985, ch. 110, par. 2—406(b).) In the instant case, Oldenburg's complaint against Hagemann alleged that Hagemann had failed to complete the contracted work on the Fort Atkinson project, including the installation of the ceiling tile. In his third-party complaint against Johnson, Hagemann alleged that Johnson had specifically approved the ceiling tile installed by Hagemann, that

Johnson failed to maintain proper inspection of the construction project and to advise Hagemann that he was installing the wrong tile, and that Johnson failed to see that the bids conformed to the specifications. Hagemann further alleged that subsequent to the installation, Oldenburg informed Hagemann that he was installing the wrong tile and that it would have to be removed and replaced. As the allegations of Hagemann's complaint, which for purposes of Johnson's motion to dismiss must be taken as true (*Vaughn v. General Motors Corp.* (1984), 102 Ill. 2d 431, 436, 466 N.E.2d 195), allege that the damages sought by Oldenburg against Hagemann for Hagemann's failure to complete the installation of the proper ceiling tile directly resulted from Johnson's negligence, it appears Johnson is or may be liable to Hagemann for all or part of Oldenburg's claim against Hagemann.

■■ ■ The purpose of a third-party action is to determine the rights and liabilities of all parties before a single tribunal and upon the same evidence. (*Murczek v. Powers Label Co.* (1975), 31 Ill. App. 3d 939, 943-44, 335 N.E.2d 172.) A third-party complaint does not have to show with certainty that there will be recovery; it is sufficient that the pleadings indicate a possibility of recovery by the third-party plaintiff over against the third-party defendant. (*Badorski v. Commonwealth Edison Co.* (1980), 89 Ill. App. 3d 494, 496, 411 N.E.2d 924.) On the facts of this case, the third-party complaint shows a possibility of recovery and, therefore, it constituted a proper third-party action.

■■ Next, Johnson asserts that count II did not constitute a proper amendment to a third-party complaint under section 2—616 of the Code of Civil Procedure (Ill. Rev. Stat. 1985, ch. 110, par. 2—616(a)). Permission to allow an amendment under this section rests within the sound discretion of the trial court, and its decision will not be disturbed on review absent an abuse of that discretion. (*Montgomery Ward & Co. v. Wetzel* (1981), 98 Ill. App. 3d 243, 250, 423 N.E.2d 1170.) The record indicates Hagemann was allowed to file count II of his third party complaint on March 17, 1986. As Johnson fails to assert in this court that the trial court abused its discretion in allowing Hagemann to file count II, we must assume the court acted properly in allowing this amendment to the third-party complaint. Therefore, the order permitting the amendment cannot now be disturbed on appeal.

Johnson also claims, however, that count II was not timely filed, as under the provisions of 2—616(b) of the Code of Civil Procedure (Ill. Rev. Stat. 1985, ch. 110, par. 2—616(b)) count II of the third-party complaint does not relate back to the date of the filing of the

original third-party complaint. Johnson maintains that count II states a new cause of action and that where a new cause of action is first introduced via an amended complaint, it is considered a new lawsuit which commences on the date the amended complaint was filed. (*Millsaps v. Bankers Life Co.* (1976), 35 Ill. App. 3d 735, 742, 342 N.E.2d 329.) As count II was filed on March 17, 1986, Johnson asserts that this date is controlling in determining whether count II was timely filed. According to Johnson, Hagemann's count II claims that Johnson's alleged negligence occurred in 1982. Since this negligence claim states a new cause of action and since this claim would have expired against Johnson in 1984 under the statute of limitations provided in section 13—214(a) of the Code of Civil Procedure (Ill. Rev. Stat. 1983, ch. 110, par. 13—214(a)), Johnson maintains count II was not timely filed. We, however, do not agree.

■ Under the provisions of section 2—616(b) of the Code of Civil Procedure, an amended complaint relates back to the time of the filing of the original complaint if the original complaint was timely filed and "if it shall appear from the original and amended pleadings that the cause of action asserted *** in the amended pleading grew out of the same transaction or occurrence set up in the original pleading." (Ill. Rev. Stat. 1985, ch. 110, par. 2—616(b).) Pursuant to this section, the statute of limitations is not a bar to subsequent amendments even though a new or different cause of action is asserted, as long as the original and amended pleadings arise out of the same transaction or occurrence. *In re Estate of Chernyk* (1985), 138 Ill. App. 3d 233, 235, 485 N.E.2d 1169.

■ ■ Determining if an amended complaint may be considered to relate back to the date of the filing of the initial complaint depends upon whether the original complaint provides the defendant with all of the information necessary to prepare his defense to the claim subsequently asserted in the amended complaint. (*In re Estate of Chernyk* (1985), 138 Ill. App. 3d 233, 235, 485 N.E.2d 1169.) Here, Johnson never raised the statute of limitations defense to count I of the third-party complaint, so it is assumed the original complaint was timely filed. Count II of the complaint incorporates the first eight paragraphs of count I and establishes that the cause of action in count II grew out of the same occurrence set up in count I, the original pleading. Moreover, the first eight paragraphs of the original complaint provided Johnson with all of the information necessary to prepare his defense to the claim asserted in count II. As both counts of the complaint arose out of the same occurrence and the first count was timely filed, we find that count II relates back to the time of filing of the

original third-party complaint and that count II was not time barred by the limitation provision of section 13—214(a) (Ill. Rev. Stat. 1983, ch. 110, par. 13—214(a)). Accordingly, the trial court erred in concluding that count II was barred by the statute of limitations.

Having found that count II of the third-party complaint against Johnson was timely filed, we must next determine whether the damages sought by Hagemann in count II are recoverable in tort or whether they are barred by the economic loss doctrine.

As no contract or privity existed with Johnson, Hagemann sued in tort for damages sustained due to extra work and loss of profits resulting from Johnson's negligence in approving the wrong ceiling tile, in failing to maintain inspection of the construction project and to advise Hagemann he was installing the wrong tile, and in failing to see that the bids conformed to the specifications for the project. Johnson maintains that Hagemann's negligence claim against Johnson for economic losses is barred by the economic loss doctrine.

■■ In *Moorman Manufacturing Co. v. National Tank Co.* (1982), 91 Ill. 2d 69, 435 N.E.2d 443, our supreme court defined "economic loss" as " 'damages for inadequate value, costs of repair and replacement of the defective project, or consequent loss of profits—without any claim of personal injury or damage to other property ***' [citation]." (91 Ill. 2d 69, 82, 435 N.E.2d 443.) According to *Moorman*, the remedy for economic loss lies in contract and not in tort law, which is particularly suited for personal injury or property damages resulting from a sudden or dangerous occurrence. (91 Ill. 2d 69, 86, 435 N.E.2d 443.) However, the *Moorman* court pointed out that economic loss is recoverable in tort "where one intentionally makes false representations (*Soules v. General Motors Corp.* (1980), 79 Ill. 2d 282[, 402 N.E.2d 599)] and where one who is in the business of supplying information for the guidance of others in their business transactions makes negligent representations (*Rozny v. Marnul* (1969), 43 Ill. 2d 54[, 250 N.E.2d 656)]." (91 Ill. 2d 69, 88-89, 435 N.E.2d 443.) It is the exception to the economic loss doctrine impliedly created by the *Moorman* court's recognition of the *Rozny* case which formulates the basis of Hagemann's claim that he is entitled to recovery in tort for his economic loss. Moreover, we believe it is this exception which substantially weakens Johnson's reliance on *Anderson Electric, Inc. v. Ledbetter Erection Corp.* (1986), 115 Ill. 2d 146, 503 N.E.2d 246, to argue that a plaintiff seeking recovery for purely economic losses due to defeated expectations of a commercial bargain cannot recover in tort.

In *Anderson* the court held that an electrical subcontractor could

not recover in tort for additional costs incurred in redoing much of its work due to an equipment manufacturer's negligent failure to supervise and inspect the subcontractor's work in installing the manufacturer's product, as per the subcontractor's agreement with the general contractor. The court found that the additional costs a subcontractor incurred in redoing its work constituted pure economic losses which arose solely from disappointed commercial expectations of anticipated profits on its contract with the general contractor to perform the electrical work. (*Anderson Electric, Inc. v. Ledbetter Erection Corp.* (1986), 115 Ill. 2d 146, 153, 503 N.E.2d 246.) The court, in reaching its finding, particularly noted and discounted the subcontractor's argument that it was entitled to recovery based upon the *Moorman* exception that economic losses are recoverable in tort " 'where one who is in the business of supplying information for the guidance of others in their business transactions makes negligent representations.' " (115 Ill. 2d 146, 153, 403 N.E.2d 246, citing *Moorman Manufacturing Co. v. National Tank Co.* (1982), 91 Ill. 2d 69, 88-89, 435 N.E.2d 443.) The *Anderson* court found that this exception was inapplicable to the case before it, as the subcontractor did not allege in its complaint that the manufacturer was the supplier of information. 115 Ill. 2d 146, 153-54, 503 N.E.2d 246.

In the case before us, however, Hagemann in his third-party complaint against Johnson alleged that Hagemann presented to Johnson the type of ceiling tile to be installed by Hagemann, that Johnson approved the tile as proper, that Hagemann then installed the approved ceiling tile, and that subsequent to the installation, Oldenburg, the contractor who hired Hagemann to acquire and install the ceiling, informed Hagemann that the tile was substandard and would have to be removed and replaced. The negligent representations espoused in the *Moorman* exception are limited to situations involving one who in the course of his business supplies information for the guidance of others in their relations to third parties. (*Black, Jackson & Simmons Insurance Brokerage, Inc. v. International Business Machines Corp.* (1982), 109 Ill. App. 3d 132, 136, 440 N.E.2d 282.) Here, Johnson's alleged negligent representation regarding the improper ceiling tile detrimentally affected Hagemann's relations with a third party, Oldenburg. In light of the allegations within Hagemann's third-party complaint, it can be said that the complaint sufficiently alleged that Johnson was a supplier of information "for the guidance of others in their business transactions" and that Johnson made negligent representations. Therefore, the instant case is distinguishable from *Anderson* because Hagemann's cause of action appears to fall within the exception

to the *Moorman* rule.

Hagemann relies on *Ferentchak v. Village of Frankfort* (1984), 121 Ill. App. 3d 599, 459 N.E.2d 1085, *rev'd on other grounds*, (1985), 105 Ill. 2d 474, 475 N.E.2d 822, to argue that the *Moorman* case should be read as confining its doctrine to "barring tort recovery for economic losses to commercial contexts, wherein the harm was to a plaintiff's reasonable commercial expectations and where the plaintiff's remedies against the party causing the harm are sufficient under contract or warranty theories of recovery." (121 Ill. App. 3d 599, 607, 459 N.E.2d 1085.) On the basis of this reading of *Moorman*, Hagemann argues that he should not be barred tort recovery for his economic losses since no contractual or warranty-like theory of recovery was available to him as against Johnson.

In *Ferentchak*, the plaintiffs, homeowners, were not barred tort recovery for the damage to their home as against the architect who designed and oversaw the construction of water drainage system and against the village, which advised the builder of the home as to the foundation-level requirements. The damage to the plaintiffs' home resulted from the foundation grade being set too low and from an inadequate and improper drainage system. As there was no warranty-like remedy against the architect and village, the court concluded that plaintiffs' tort actions against the village and architect were not barred by *Moorman*. The court reasoned that to find there were no remedies available to the plaintiffs for the harm to their consumer expectations would leave the plaintiffs with no action, except against the ultimate supplier, the builder, who would then be left to possible third-party actions against those responsible in the "chain of production." (*Ferentchak v. Village of Frankfort* (1984), 121 Ill. App. 3d 599, 608, 459 N.E.2d 1085, *rev'd on other grounds* (1985), 105 Ill. 2d 474, 475 N.E.2d 822.) Thus, the court permitted recovery for economic loss against the architect and the village for breach of a common law duty to maintain a standard of care exhibited in their professions. See *Wheeling Trust & Savings Bank v. Tremco Inc.* (1987), 153 Ill. App. 3d 136, 143, 505 N.E.2d 1045.

Here, in the case before us, there also is no contract or warranty action available to Hagemann against Johnson, nor is there any direct or indirect contractual relationship between Johnson and Oldenburg. However, a contractual relationship exists between Oldenburg and Hagemann, and, therefore, under their contract, there is an adequate remedy available to Hagemann for his economic damages. It is this possible contractual remedy which distinguishes the instant case from the holding in *Ferentchak*, as in *Ferentchak* it appears it was the lack

of an adequate remedy to compensate the plaintiffs' disappointed expectation interest which caused the court to find a means for avoiding the application of the economic loss doctrine. (See *Bates & Roberts Construction Corp. v. North Shore Sanitary District* (1984), 128 Ill. App. 3d 962, 975, 471 N.E.2d 915, *aff'd on other grounds* (1985), 109 Ill. 2d 225, 486 N.E.2d 902.) Thus, the holding in *Ferentchak* is inapplicable to the case before us and is limited to the unusual facts stated therein. See *Washington Courte Condominium Association-Four v. Washington-Golf Corp.* (1986), 150 Ill. App. 3d 681, 687, 501 N.E.2d 1290.

Johnson relies on this court's decision in *Bates & Rogers Construction Corp. v. North Shore Sanitary District* (1984), 128 Ill. App. 3d 962, 471 N.E.2d 915, *aff'd on other grounds* (1985), 109 Ill. 2d 225, 486 N.E.2d 902, to argue that tort principles do not apply where the only damages sought are for economic loss. Hagemann argues that *Bates* differs in several important respects from the instant case. Unlike the case at bar, the plaintiff contractor never presented to the defendant architects/engineers any materials to be used in the construction of the project for the defendants' approval. Also, the sanitary district in *Bates* had contracted with the architects/engineers for their services as well as contracting with the plaintiff to act as prime contractor for two divisions of the sewage treatment project. The sanitary district, by impliedly warranting, as owner, that the plans and specifications it furnished for the project would enable the plaintiff contractor to successfully do the work, had "effectively 'assumed responsibility'" for the plaintiff contractor's damages caused by the architects/engineers' defective plans. Hagemann claims that no such assumption of responsibility is present in the instant case. We disagree, as Oldenburg in furnishing the plans and specifications to Hagemann, on which Hagemann made his bid and on which he was awarded the bid, impliedly warranted that Hagemann would be able to successfully complete the work on the basis of those plans and specifications. The damage Hagemann suffered as a result of following those specifications was damage to his "expectation interest" that he would be able to successfully complete his performance of the contract between Oldenburg and him. As mentioned earlier in this disposition, this interest was one clearly intended to be protected by the law of contract and not by tort law. See 128 Ill. App. 3d 962, 975, 471 N.E.2d 915.

■■ As we noted in *Bates*, "[i]nsofar as the impetus for Illinois requirements that architects be licensed *** is for the protection of life, health, and property (Ill. Rev. Stat. 1981, ch. 111, pars. 1205 ***), tort law may indeed be an appropriate framework within which

persons whose reasonable expectations in engaging such professionals have been disappointed to their economic detriment." (*Bates & Rogers Construction Corp. v. North Shore Sanitary District* (1984), 128 Ill. App. 3d 962, 976, 471 N.E.2d 915, *aff'd on other grounds* (1985), 109 Ill. 2d 225, 486 N.E.2d 902.) In *Bates*, however, the plaintiff contractors did not engage the architects/engineers, nor were they remediless since the economic losses they suffered related strictly to their disappointed expectation interest in receiving the benefit of their contract. Here, too, Hagemann did not engage Johnson, nor was Hagemann remediless since his economic loss related strictly to his disappointed expectation interest in receiving the benefit of his contract with Oldenburg. Therefore, we conclude here, as we did in *Bates*, that the plaintiff (Hagemann) could not recover damages in tort against the architect (Johnson).

Finally, we note that *Rosos Litho Supply Corp. v. Hansen* (1984), 123 Ill. App. 3d 290, 462 N.E.2d 566, relied upon by Hagemann for the proposition that "economic loss occasioned by an architect's negligent performance of his professional duties is recoverable in an action in tort" (123 Ill. App. 3d 290, 298, 462 N.E.2d 566), is distinguishable from the case at bar. In *Rosos*, plaintiff sought damages for economic loss brought to a building addition to an existing structure he owned. Defendant Hansen was the architect who agreed to design and supervise the construction. Rosos alleged that Hansen's negligent performance of his professional duties resulted in the structural defects to the concrete floor of the addition. Rosos sought damages for economic loss occasioned by the repair of the concrete floor.

The court found that where an architect renders his professional services to another, the economic loss occasioned by the negligent performance of his professional duties is recoverable in an action in tort. (*Rosos Litho Supply Corp. v. Hansen* (1984), 123 Ill. App. 3d 290, 298, 462 N.E.2d 566.) However, the important difference between *Rosos* and the case at bar lies in the fact that Rosos directly hired the architect Hansen and specifically relied on his professional standards of care and skill in designing and supervising the construction of the storage building addition. Moreover, as we pointed out in *Bates*, wherein we discussed the *Rosos* case, "beyond the plaintiff's disappointed expectation interest in the architect's performance of the work called for by the contract, the negligent performance of the architect also disappointed the expectation interest which would be held by anyone *who employed* a professional that he *** would perform to the level expected of such a professional under similar circumstances." (Emphasis added.) (*Bates & Rogers Construction Corp. v.*

*North Shore Sanitary District* (1984), 128 Ill. App. 3d 962, 975, 471 N.E.2d 915, *aff'd on other grounds* (1985), 109 Ill. 2d 225, 486 N.E.2d 902.) As, under the facts of this case, it could not be said that Hagemann possessed the same type of expectation interest as one "who employed" an architect, we decline to follow the result reached in *Rosos*.

Accordingly, although we find that count II of Hagemann's third-party complaint was timely filed, we find it was properly dismissed as it seeks recovery of strictly economic losses which are not recoverable in a tort action.

For the reasons stated, the judgment of the circuit court of Winnebago County is affirmed.

Affirmed.

LINDBERG, P.J., and WOODWARD, J., concur.