BATES & ROGERS CONSTRUCTION CORPORATION *et al.*, Plaintiffs-Appellants, v. NORTH SHORE SANITARY DISTRICT *et al.*, Defendants-Appellees.

Second District   No. 83—813

Opinion filed November 14, 1984.—Rehearing denied December 27, 1984.

REINHARD, J., specially concurring.

Donald V. O'Brien and LaDonna M. Loitz, both of O'Brien and O'Rourke, of Chicago, for appellants.

Kevin R. Sido and Stephen R. Swofford, both of Hinshaw, Culbertson, Moelmann, Hoban & Fuller, of Chicago, for appellees.

JUSTICE UNVERZAGT delivered the opinion of the court:

The question presented by this appeal is whether the economic loss doctrine of *Moorman Manufacturing Co. v. National Tank Co.* (1982), 91 Ill. 2d 69, bars the suit of a contractor against an architect/engineer where there is no contract between them, and where the contractor claims the architect/engineer was negligent in the design and administration of a project under construction.

This cause is appealed to this court for the second time. The first appeal was taken from the Lake County circuit court's grant of motions to strike and/or dismiss the complaint; this appeal is taken from the same court's subsequent grant of defendant Greeley & Hansen's motion for summary judgment following this court's partial affirmance and partial reversal, and remand for further proceedings. *Bates & Rogers Construction Corp. v. North Shore Sanitary District* (1980), 92 Ill. App. 3d 90.

The plaintiffs in the first cause were, and are here as well, Bates & Rogers Construction Corporation (the Contractor) and two of its subcontractors, Economy Mechanical Industries, Inc., and Goldberg & O'Brien Electric Company (the Subcontractors). Plaintiffs sued defendants North Shore Sanitary District (NSSD) and its engineers, d/b/a individually and as Greeley & Hansen Engineers, a partnership (referred to collectively as defendants or Engineers), claiming damages arising from the construction of portions of the Gurnee Sewage Treatment Plant. After remand, plaintiffs settled their claim against

the NSSD, and it is not involved as a party to this second appeal.

In the first appeal, plaintiffs sought reversal of the trial court's dismissal of its amended five-count complaint on the grounds of multifariousness and failure to state a cause of action. This court affirmed the dismissal of counts I, III and V against NSSD, but reversed the dismissal by the trial court of counts II and IV against the Engineers. The stated ground of the trial court for dismissing the counts was that the Engineers owed no duty to the Contractor as a matter of law. This court disagreed, noting it had recently held that an engineer owes the contractor a duty of care in the design and administration of the project. (*Bates & Rogers Construction Corp. v. North Shore Sanitary District* (1980), 92 Ill. App. 3d 90, 96-98, citing, *inter alia, W. H. Lyman Construction Co. v. Village of Gurnee* (1980), 84 Ill. App. 3d 28, 40.) We also disagreed that *Alfred N. Koplin & Co., Inc. v. Chrysler Corp.* (1977), 49 Ill. App. 3d 194, was persuasive authority for the proposition that the plaintiffs' complaint failed to state a cause of action because it claimed economic damages. We observed that the reasoning of *Koplin,* which involved products liability, had not been applied in design malpractice cases such as *Lyman,* noted above, and *Rozny v. Marnul* (1969), 43 Ill. 2d 54. (*Bates & Rogers Construction Corp. v. North Shore Sanitary District* (1980), 92 Ill. App. 3d 90, 98.) Accordingly, we reversed and remanded the cause for further proceedings pursuant to our opinion. We later modified our opinion in order to reverse the portion of the trial court's judgment dismissing count V against NSSD insofar as that count amounted to a claim for the retainage held by NSSD under the contract, and for interest on that amount.

Upon remand, plaintiffs filed a three-count second amended complaint on December 28, 1981. Counts I and II against the Engineers alleged they were negligent in their design and administration of the project. Counts I and II were substantively the same as former counts II and IV, which were involved in the previous appeal. Count III, formerly count V in the previous appeal, was for the retainage and interest thereon held by the NSSD. Plaintiffs and the NSSD later settled, and an agreed judgment order was entered on May 5, 1983, dismissing count III of the second amended complaint with prejudice.

Plaintiffs' complaint against the Engineers essentially alleged that they were negligent in their design of certain equipment and negligent in their supervision of the Gurnee Sewage Treatment Plant project. Defendants had a contract with the NSSD to provide certain engineering and architectural services in connection with the construction of the Gurnee Sewage Treatment Plant. Bates & Rogers

had a contract with the NSSD to be the prime contractor for two divisions of the project, specifically known as contract divisions P12A-P12B and P12C-P12D. In connection with both of these divisions, Bates & Rogers subcontracted with plaintiff Economy Mechanical Industries, Inc., for the performance of certain mechanical work, including the piping for the project. In connection with the latter division only, Bates & Rogers subcontracted with the remaining plaintiff, Goldberg & O'Brien Electric Company, for all the electrical work to be performed. There was no contractual privity between Bates & Rogers and Greeley & Hansen. Plaintiffs' complaint specifically alleged the Engineers were negligent because they:

"a) Carelessly and negligently failed to include within the design criteria for the electrical switchgear sufficient and adequate information as to the existing power source facilities when they knew or in the exercise of ordinary care ought to have known that such failure would result in a lack of electrical power to the construction site and would burden, obstruct and interfere with the ordinary prosecution of the work by plaintiffs;

b) Carelessly and negligently failed to cure the design defects described above in timely fashion;

c) Carelessly and negligently caused a re-design of the switchgear after the switchgear had been ordered from the supplier, Westinghouse Electric Co., and substantial work on it had been done, so as to make the same compatible with generators purchased under a separate contract when they knew or in the exercise of ordinary care ought to have known that plaintiffs' work would be forced out of sequence, would proceed inefficiently, and the cost thereof would be burdened;

d) Carelessly and negligently administered and exercised their powers as the Engineer under the Contract documents so as to deny access to the plaintiffs to the work, and to interfere with plaintiffs' performance of the work when they knew or in the exercise of ordinary care ought to have known that plaintiffs' costs and productivity would be severely prejudiced;

e) Carelessly and negligently failed to provide electrical service to plaintiffs' job site in accordance with the specifications when they knew or in the exercise of ordinary care ought to have known that such failure would force plaintiffs' work out of sequence and burden the cost thereof."

As a direct and proximate result:

"15. [N]o electrical service was furnished the work site until

more than a year after the same was required, and plaintiffs were denied access to a material portion of the work, the sequence of plaintiffs' work was disrupted and burdened so as to increase the cost thereof and decrease its productivity and to cause the proliferation and duplication of labor and labor operations not otherwise necessary."

As a consequence, plaintiffs sustained:

"16. [E]normous cost overruns in the actual performance and prosecution of their work under the contract, including but not limited to excessive labor costs, labor 'add-ons', excessive supervision, winter protection of their work, increased overhead, bond and insurance costs, interest on moneys borrowed and expended and the loss of anticipated profit ***."

Defendants moved for summary judgment on the ground that the damages claimed, even if proved, were economic damages, recovery of which is barred in negligence as a matter of law. The motion included citation to three Illinois Supreme Court cases decided subsequent to the parties' first appeal of this cause. After briefing and argument by both parties, the court granted summary judgment, including a finding there was no just cause to delay enforcement or appeal.

The parties raise these two issues: (1) whether the trial court erred in finding that plaintiffs could not recover economic loss resulting from the Engineers' professional negligence; and (2) whether the Engineers owe plaintiffs a duty in tort.

Defendants argued for summary judgment below primarily on the authority of *Moorman Manufacturing Co. v. National Tank Co.* (1982), 91 Ill. 2d 69, *Redarowicz v. Ohlendorf* (1982), 92 Ill. 2d 171, and *Foxcroft Townhome Owners Association v. Hoffman Rosner Corp.* (1983), 96 Ill. 2d 150. Defendants rely heavily on these same cases here as well, with the addition of this court's recent decision in *Palatine National Bank v. Charles W. Greengard Associates, Inc.* (1983), 119 Ill. App. 3d 376, which they urge is controlling.

Plaintiffs vigorously argued below the inapplicability of *Moorman, Redarowicz* and *Foxcroft*, contending instead that the facts of this case bring it within the *Rozny v. Marnul* situation specifically noted in the *Moorman* decision. (*Rozny v. Marnul* (1969), 43 Ill. 2d 54.) Plaintiffs maintain that position here as well, and although we denied them leave to file a supplemental reply brief upon defendants' objections, they were permitted to file two recent decisions as additional authority in support of their position: *Ferentchak v. Village of Frankfort* (1984), 121 Ill. App. 3d 599, and *Rosos Litho Supply Corp. v.*

*Hansen* (1984), 123 Ill. App. 3d 290. For the reasons discussed below, we affirm the trial court's grant of defendants' motion for summary judgment.

Initially, we note the court's judgment was entered on the defendants' motion for summary judgment under section 2—1005 of the Civil Practice Law (Ill. Rev. Stat. 1983, ch. 110, par. 2—1005), and the standard of review of such a judgment under that section applies. The defendants' motion alleged in substance that "the damages plaintiffs seek to recover, even if proved, are economic damages, recovery of which is barred in negligence." It has been held that, although there may exist an issue of fact, the trial court, when viewing the evidence in the light most favorable to the nonmoving party, may grant summary judgment where it concludes that, as a matter of law, no liability exists. *Dale v. Groebe & Co., Realtors* (1981), 103 Ill. App. 3d 649, 652; *McCann v. Bethesda Hospital* (1979), 80 Ill. App. 3d 544.

The reasoning underlying the *Koplin* case (*Alfred N. Koplin & Co. v. Chrysler Corp.* (1977), 49 Ill. App. 3d 194), which we construed in the first appeal of this cause to be limited to products liability cases, was extended in *Moorman Manufacturing Co. v. National Tank Co.* (1982), 91 Ill. 2d 69, to bar recovery of solely "economic losses" in negligence actions as well. The court held that purely economic loss arising from disappointed commercial expectations is limited to recovery in contract, not tort.

The plaintiff there had purchased a large steel grain storage tank manufactured by the defendant which developed a large crack shortly after it was erected, and it sought recovery of its damages—the cost of repairs and reinforcement and loss of use of the tank—in tort. The court determined that the case presented only an instance of disappointed commercial expectations and that contract law alone provided a framework for recovery. (*Moorman Manufacturing Co. v. National Tank Co.* (1982), 91 Ill. 2d 69, 85-91.) The court defined economic loss with reference to commercial expectations, to wit: "the defect is of a qualitative nature and the harm relates to the consumer's expectation that a product is of a particular quality so that it is fit for ordinary use ***." (91 Ill. 2d 69, 88.) The remedy for losses suffered by a purchaser for disappointed expectations due to deterioration, internal breakdown, or nonaccidental cause lies in contract, whereas tort theory "is appropriately suited for personal injury or property damage resulting from a sudden or dangerous occurrence ***." (91 Ill. 2d 69, 86.) Because the plaintiff there had suffered solely economic loss as defined there, the court concluded it could not recover under a negligence theory.

Significantly, however, the court noted, but did not reject or overrule, two cases in which economic loss was found recoverable in tort; *i.e.*, "where one intentionally makes false representations *(Soules v. General Motors Corp.* (1980), 79 Ill. 2d 282), and where one who is in the business of supplying information for the guidance of others in their business transactions makes negligent representations *(Rozny v. Marnul* (1969), 43 Ill. 2d 54)." *Moorman Manufacturing Co. v. National Tank Co.* (1982), 91 Ill. 2d 69, 88-89.

The crux of plaintiffs' position here is that the facts of this case distinguish it from *Moorman* and its progeny, and place it within the exception to the economic loss doctrine impliedly created by *Moorman's* recognition of the *Rozny* case. They assert that money damages which arise from professional negligence do not constitute economic loss, and recovery thereof in tort is not barred.

Two cases decided by the Illinois Supreme Court after *Moorman, Redarowicz v. Ohlendorf* (1982), 92 Ill. 2d 171, and *Foxcroft Townhome Owners Association v. Hoffman Rosner Corp.* (1983), 96 Ill. 2d 150, extended the *Moorman* economic loss doctrine beyond the products area, and explicitly applied the principles of economic loss to realty, barring recovery for negligent construction of a residence. Notably, there was no privity between the parties in *Redarowicz,* where the plaintiff was a subsequent homeowner of a residence constructed by the defendant, although the parties were in the chain of ownership of a home, however. In this case, there is likewise no privity between Bates & Rogers and Greeley & Hansen. *Redarowicz* did not reach an analysis of the scope of the duty owed there by the defendant to the plaintiff, since it found no reason to treat a disappointed consumer of a storage tank (as in *Moorman*) or a disgruntled purchaser of a certain house (as in the case before it) any differently. There was no showing of harm beyond the plaintiff's disappointed commercial expectations, nor was there any harm to persons or other property. The court construed that the plaintiff's complaint alleged essentially only a qualitative defect in a product.

There was a factual situation similar to *Redarowicz* in the *Foxcroft* case. (96 Ill. 2d 150.) That is, there was no privity between the plaintiffs on appeal, who were the subsequent purchasers of the condominiums and the defendant; there were latent construction defects in the residences; there was no physical injury to persons or other property; and the losses claimed were economic. The court there relied on *Moorman* and *Redarowicz* as authority for denying plaintiff recovery for its economic losses in tort. *Foxcroft Townhome Owners Association v. Hoffman Rosner Corp.* (1983), 96 Ill. 2d 150, 156-57.

The noncritical mention of *Rozny* in the course of the supreme court's *Moorman* opinion, in addition to his view that that decision was the result of the court having applied an implicit tort analysis to the facts of that case, has caused at least one author to conclude that economic loss is recoverable in tort "where public policy considerations warrant the imposition of a social duty," and where there is "a showing of harm beyond mere disappointed expectations, as in *Rozny*." (Bertschy, *Negligent Performance of Service Contracts & the Economic Loss Doctrine*, 17 J. Mar. 249, 269 (1984).) In the same and in a related article (Bertschy, *The Economic Loss Doctrine in Illinois After Moorman*, 71 Ill. B.J. 346 (1983)), the author rejects any notion that tort and contract are competing theories of law, noting that contract and tort are commonly found to exist on the same facts. "Whether economic loss is recoverable in tort depends upon a rigid application of traditional tort principles"; to wit: foreseeability, the likelihood of injury, the nature of the risk, the magnitude of the burden of guarding against the injury, and the consequences of placing the burden on the defendant. 71 Ill. B.J. 346, 350-51.

In the *Rozny* case, the plaintiffs brought suit against the defendant, a surveyor, for his preparation of an inaccurate survey several years before for a different party than the plaintiffs. The plaintiffs relied on the survey in the placement and construction of a garage on their property. It was later discovered that portions of the garage and driveway encroached on neighboring property as the result of locating the driveway and the garage in reliance on markers placed according to the inaccurate survey. Although the loss suffered by the plaintiffs there was clearly economic loss, the supreme court permitted recovery in tort, citing the following factors as relevant to its holding:

"(1) The express, unrestricted and wholly voluntary 'absolute guarantee for accuracy' appearing on the face of the inaccurate plat;

(2) Defendant's knowledge that this plat would be used and relied on by others than the person ordering it, including plaintiffs;

(3) The fact that potential liability in this case is restricted to a comparatively small group, and that, ordinarily, only one member of that group will suffer loss;

(4) The absence of proof that copies of the corrected plat were delivered to anyone;

(5) The undesirability of requiring an innocent reliant party to carry the burden of a surveyor's professional mistakes;

(6) That recovery here by a reliant user whose ultimate use

was foreseeable will promote cautionary techniques among surveyors." *Rozny v. Marnul* (1969), 43 Ill. 2d 54, 67-68.

Plaintiffs argue in detail that the same factors considered relevant in *Rozny* are also found in the case at bar, and they urge that they be allowed to recover the monetary damages they suffered as a result of the defendants' negligence. They distinguish *Redarowicz* and *Foxcroft* on the basis that neither involved professional services, nor the furnishing of information for the use of another party. They point out that the relationship between the parties in those cases is unlike the contractor-architect/engineer relationship in this case, and that the nature of the damages sought here "are, quite simply, not economic losses." They assert that in each of the three cases—*Moorman, Redarowicz* and *Foxcroft*—the plaintiff was a purchaser of some "thing," a physical object that proved to be less than what the plaintiff had anticipated, and in each case there was a "chain of sale" of the item which could be traced from the defendant to the plaintiff.

Despite plaintiffs' argument detailing the existence of the *Rozny* factors in the context of the instant cause, we are bound to consider the import of three other recent cases which have construed *Moorman.*

The first, *Palatine National Bank v. Charles W. Greengard Associates, Inc.* (1983), 119 Ill. App. 3d 376, was decided by this court and concerned the application of the economic loss doctrine in a context which principally involved a service contract. As noted, the defendants consider *Palatine* to be controlling here. The defendant in *Palatine*, Charles W. Greengard Associates, Inc., was retained to perform professional engineering services for a construction project. The *Palatine* plaintiffs sued Greengard alleging that its design for a storm and surface water drainage system was inadequate and, as a consequence, the project flooded and its progress was delayed. The delay, in turn, resulted in mortgage foreclosure proceedings, and plaintiffs lost all of their rights in the development. Plaintiffs sued Greengard in negligence, seeking damages for expenses and lost profits, as well as attorney fees incurred by plaintiffs in other litigation. The trial court dismissed plaintiffs' negligence action based on the economic loss doctrine of *Moorman.* On appeal, we affirmed the dismissal based on our view that the "product" sold in that case consisted of the design and construction of a storm and surface water removal system to be constructed on Loch Wood Acres. The only defect alleged in the complaint was that the system failed to perform its function as represented, and the damages sought were not for personal injury or property damage but for economic losses. Accordingly, we determined

*Moorman* barred the action. The cause was reversed in part, but remanded, however, for trial on a remaining count for breach of warranty which was premised upon the written agreement between the parties.

We agree that *Palatine* can be distinguished fairly from the case at bar in that there was a direct contractual relationship between Investco, the developer, and Greengard, the professional engineers. Additionally, we did not undertake an analysis as to whether the facts of that cause would bring it within the *Rozny* public policy exception to the economic loss doctrine. In light of cases subsequent to our decision in *Palatine* which further construed *Moorman*, it would seem that notwithstanding the lack of such an analysis, we nevertheless would be compelled to reach the same result.

We refer here to the plaintiffs' additional authority submitted on leave after their reply brief was filed, *Ferentchak v. Village of Frankfort* (1984), 121 Ill. App. 3d 599, *appeal allowed* (1984), 101 Ill. 2d 546, and *Rosos Litho Supply Corp. v. Hansen* (1984), 123 Ill. App. 3d 290. The court in *Ferentchak* concluded that economic losses relating to the plaintiffs' reasonable expectations with respect to the defendants' acts could be recovered in tort where the defendants' own negligence under traditional tort analysis had caused injury *and* where there was no contract or warranty action available to the plaintiffs against the defendants. Specifically, the court stated:

> "We read *Moorman* and subsequent cases to establish that economic losses are not recoverable in tort against a defendant where the injuries caused by that defendant relate directly to plaintiff's reasonable commercial expectations respecting the defendant's actions *and* where plaintiff has or had appropriate and adequate contract or warranty actions as against the defendant for such harm. In such circumstances, and where the injury is to the item supplied or produced by that defendant, contractual benefit-of-bargain expectations damages are the appropriate measure of recovery. However, the same economic losses are recoverable in tort, as against defendants who by their own negligence, as measured by traditional tort analysis, have caused the injuries *and against whom no contract or warranty recovery is available. As to these defendants, when unconnected with the contract-warranty defendant, the harm caused by them is not related to the plaintiff's commercial expectations, but to traditional societal expectations and conduct.*" (Emphasis added.) *Ferentchak v. Village of Frankfort* (1984), 121 Ill. App. 3d 599, 606.

The "contract-warranty" defendant there was the builder, from whom the plaintiffs purchased their home. The builder had purchased the lot from the developer and constructed the home. The developer had engaged Robert Hamilton, a civil engineer, to design and oversee the construction work on the subdivision in Frankfort, which plans included a surface water drainage system. Hamilton testified that the omission from the plans of certain shape and depth specifications for a surface water drainage channel easement was deliberate since they were not required by ordinance, individual development of the lots would be possible, and the village would retain the ability to restore the natural drainage through use of the channel easement.

The village of Frankfort code administrator advised the builder as to the foundation level requirements pursuant to the village code, and while at the site prior to the pouring of the cement, he personally directed that the foundation be raised as much as possible and still remain on good, bearing soil. An occupancy permit was withheld until the builder constructed a drainage swale according to instructions received from Hamilton's office and the code administrator. After the Ferentchaks occupied the home, they experienced water ponding on the lot, as well as water in the basement family room, and water oozing into the lower level of the house. Basement waterproofing was unsuccessful in solving the problem.

The opinion of the plaintiffs' expert witness at trial was that the foundation grade had been set too low, and that this fact, coupled with an inadequate and improper drainage system, resulted in the damage to the plaintiffs' home. The jury returned verdicts in the plaintiffs' favor and against both defendants, Hamilton and the village of Frankfort. One of the issues raised on appeal was whether the plaintiffs' causes of action sounding in negligence against each defendant were barred by virtue of the *Moorman* decision.

In deciding that the Ferentchaks' negligence action was not barred by *Moorman*, the court emphasized the fact that even though the Ferentchaks may have had an adequate contract-warranty remedy against the builder, the architect was not an employee of the builder nor was he otherwise in privity with him. Since it was concluded that the harm to the plaintiffs' consumer expectations was caused by the architect for the developer, but that the Ferentchaks' only apparent recourse under *Moorman* was a cause of action against the builder as contract-warranty defendant, the court determined that the *Moorman* decision was not intended to bar tort recovery as against the architect in the instant case.

Implicit in the underlying rationale of the court's decision was, we

believe, the court's overriding concern that the defendants, whose combined negligence was the incipient cause of the ultimate qualitative defect, would remain unaccountable. It noted that neither the architect nor the village was connected with the contract-warranty defendant, the builder, and neither was a party for whom the builder of the home assumed responsibility. The relationship of the parties in the case at bar, however, is in evident contrast to that of the parties in *Ferentchak*, and we believe a different result is warranted.

The contract-warranty defendant under the facts here was the NSSD which, unlike the builder in *Ferentchak*, had effectively "assumed responsibility" for the plaintiffs' damages caused by the Engineers' defective plans. This is by virtue of the well-established principle that an owner impliedly warrants that the plans and specifications it furnishes for the job will enable the contractor to successfully do the work; and that if the " 'plans are faulty thereby requiring the contractor to incur additional costs, the [owner] must reimburse the contractor for damages incurred because of the breach of the implied warranty ***.' " (*Bates & Rogers Construction Corp. v. North Shore Sanitary District* (1980), 92 Ill. App. 3d 90, 94, citing *W. H. Lyman Construction Co. v. Village of Gurnee* (1980), 84 Ill. App. 3d 28, 37.) Also, unlike the architect and village in *Ferentchak*, who were "unconnected with the contract-warranty defendant," the architect/engineers here were directly connected with the NSSD by virtue of their contract. Without having the benefit of a copy of that contract in the record, it cannot be stated with assurance what direct remedies would or would not be available to the NSSD against the Engineers. Based on the facts available in the record of the instant cause, it would appear that the NSSD might have available to it an implied right of indemnity analogous to that found in *Maxfield v. Simmons* (1983), 96 Ill. 2d 81. In that case, the plaintiff sued the defendant Simmons, contending that a house Simmons built for him failed to meet the contract specifications because the roof was constructed in a " 'poor and shoddy manner as to cause the roof thereon to buckle, bend and dip, and caused the interior ceiling to crack, split at the seams and bulge.' " (96 Ill. 2d 81, 83.) Simmons in turn filed a third-party complaint which alleged that if he were liable to Maxfield, it would be because the trusses supplied by DeNeal and manufactured by Holt were defective, and therefore the third-party defendants must indemnify him. The appellate court dismissed the third-party complaint, relying on *Board of Education v. Joseph J. Duffy Co.* (1968), 97 Ill. App. 2d 158, and *Talandis Construction Corp. v. Illinois Building Authority* (1974), 23 Ill. App. 3d 929, and held that the third-party complaint

failed to state a cause of action for the reason that "a stranger to a contract between two parties cannot be compelled to indemnify one of the parties for breach of contract absent the stranger's *express* agreement to so indemnify." *Maxfield v. Simmons* (1982), 107 Ill. App. 3d 341, 343.

The supreme court reversed, finding the situation analogous to a products liability case in which the assembler of the completed product is entitled to indemnity from the manufacturer of a defective component part. The court reasoned that if Simmons was liable to Maxfield, it would not be because Simmons breached his contract with Maxfield, but due to DeNeal's and Holt's tortious conduct. *Maxfield v. Simmons* (1983), 96 Ill. 2d 81, 87.

The conclusion that such a cause of action might be available to the NSSD in this case in the event it had been or would be found liable in any original action brought by plaintiffs here would, at least, appear to flow from and be consistent with our equation of a contract for professional engineering services to a "product" in our *Palatine* case. *Palatine National Bank v. Charles W. Greengard Associates, Inc.* (1983), 119 Ill. App. 3d 376, 380.

We note a case decided after *Ferentchak, Rosos Litho Supply Corp. v. Hansen* (1984), 123 Ill. App. 3d 290, declined to follow the lead of *Palatine* because *Rosos* involved the negligence of a professional, an architect, and the *Rosos* court noted *Palatine's* analysis did not distinguish between professional services negligently rendered and defective products, the latter of which was the subject of *Moorman*. Although there was a contract between the plaintiff and the defendant, *Rosos* declined to limit the plaintiff's remedy to its contract claim, and refused to construe *Moorman* broadly as having abolished by inference all professional malpractice actions claiming economic losses arising from the negligent performance of professional service contracts. The court stated:

> "Such a significant departure from established law, which would affect not only architect's malpractice, but similar actions against other professionals, should be signalled expressly by the supreme court itself." *Rosos Litho Supply Corp. v. Hansen* (1984), 123 Ill. App. 3d 290, 297.

The defendant architect and the plaintiff in *Rosos* were in direct privity of contract. As such, the plaintiff's remedy would have been limited by *Moorman* to its contract claim. The *Rosos* court determined, however, that the plaintiff would have no warranty remedy against the architect since the Uniform Commercial Code (UCC) (Ill. Rev. Stat. 1981, ch. 26, par. 1—101 *et seq.*) is inapplicable to the pro-

vision of professional services, nor is there any other implied common law or statutory warranty applicable to an architect's services. "In Illinois, 'in the absence of a special agreement [the architect] does not imply or guarantee a perfect plan or satisfactory result.' " (123 Ill. App. 3d 290, 296.) (In the interest of accuracy, we point out *Rosos'* citation to our decision in the first appeal of this cause incorrectly construes the procedural posture of that case. There was no finding the Engineers were "guilty of professional negligence"; the cause was appealed from the trial court's dismissal of the complaint on the grounds of multifariousness and failure to state a cause of action. (*Bates & Rogers Construction Corp. v. North Shore Sanitary District* (1980), 92 Ill. App. 3d 90, 91.) Consequently, *Rosos* declined to construe *Moorman* so as to deprive the plaintiff of an action in tort against the architect.

*Rosos* cited the *Ferentchak* case generally as one which could be "profitably compared" with it and, indeed, it may since in both cases the court found a means of avoiding the application of the economic loss doctrine. In both cases, a primary consideration was either the lack of a remedy or the lack of an adequate remedy to compensate the disappointed expectation interest. As indicated earlier, the supreme court has granted leave to appeal in the *Ferentchak* case. *Ferentchak v. Village of Frankfort* (1984), 121 Ill. App. 3d 599, *appeal allowed* (1984), 101 Ill. 2d 546.

The *Rosos* court recognized that above and beyond the plaintiff's disappointed expectation interest in the architect's performance of the work called for by the contract, the negligent performance of the architect also disappointed the expectation interest which would be held by anyone who employed a professional that he or she would perform to the level expected of such a professional under similar circumstances. Thus, the *Rosos* plaintiff had a sort of "secondary" expectation interest which arose by virtue of the plaintiff's employment of the defendant, who held himself out to be an expert in his line of endeavor.

We distinguish *Rosos* because, under the facts of the case at bar, the damage suffered by the plaintiffs was to their "expectation interest" that they would be able to successfully complete their performance of the contract, and that the NSSD would not hinder them in the performance of their contract, thereby allowing them to receive the full benefit of their bargain with the NSSD. In our view, this is clearly an interest which is meant to be protected by the law of contract, since each party to a construction contract impliedly warrants not to do anything to hinder the performance of the other party. (*W.*

*H. Lyman Construction Co. v. Village of Gurnee* (1980), 84 Ill. App. 3d 28, 37.) It is noted in Corbin on Contracts, sec. 1328, at 1104-05 (1952) that:

"As a general rule, every contractor must carry the risk of frustration of his hopes and expectations when subsequent events cause a decline in the value of that for which he bargained. This is not a case in which the rendition of the specific performance for which he bargained has become impossible in any sense of that abused term; it is a case in which events have prevented the realization and enjoyment of expected values from a promised performance actually rendered. In a comparatively small number of cases, it has been held that a contractor does not carry the risk of a catastrophic collapse of value. In such cases it is found that the contractor did not in fact assume the risk and that the circumstances are so extraordinary that justice requires that he should not be compelled to carry it."

In this regard, we note our decision to affirm the dismissal of two of the Contractor's counts against the NSSD in the first appeal of this cause was for the reason the contract included an exculpatory no-damages-for-delay clause. Although the Contractor specifically disclaimed the damages it sought were for delay, we determined it was, in fact, claiming such damages but had not pleaded any of the exceptions to the application of the exculpatory clause which we found, therefore, defeated its claim; *e.g.*, "[w]here the contractee is not acting in good faith, the delay is unreasonable in duration, the cause for the delay is not within the contemplation of the parties, or delay is attributable to inexcusable ignorance or incompetence of the engineer \*\*\*." *Bates & Rogers Construction Corp. v. North Shore Sanitary District* (1980) 92 Ill. App. 3d 90, 95.

On the other hand, tort law is appropriately suited for personal injury or property damages resulting from a sudden or dangerous occurrence. Insofar as the impetus for Illinois requirements that architects be licensed and engineers be registered is for the protection of life, health, and property (Ill. Rev. Stat. 1981, ch. 111, pars. 1205, 5101), tort law may indeed be an appropriate framework within which persons whose reasonable expectations in engaging such professionals have been disappointed to their economic detriment. Plaintiffs here did not engage the Engineers, however, nor were they remediless, in that the economic losses suffered by them related strictly to their disappointed expectation interest in receiving the benefit of their contract with NSSD.

For the reasons detailed above, we conclude the trial court did not

err in its judgment that the plaintiffs could not recover their damages in tort against Greeley & Hansen, even if proved.

The judgment of the circuit court of Lake County is affirmed.

Judgment affirmed.

NASH, J., concurs.

JUSTICE REINHARD, specially concurring:

In my view, the holdings in *Moorman Manufacturing Co. v. National Tank Co.* (1982), 91 Ill. 2d 69, 435 N.E.2d 443, *Redarowicz v. Ohlendorf* (1982), 92 Ill. 2d 171, 441 N.E.2d 324, and *Foxcroft Townhome Owners Association v. Hoffman Rosner Corp.* (1983), 96 Ill. 2d 150, 449 N.E.2d 125, would appear to be broadly applicable to all negligence cases, except those based on intentional false representations, and negligent representations in the context of *Rozny v. Marnul* (1969), 43 Ill. 2d 54, 250 N.E.2d 656, where economic losses are sought and where there is no personal injury or property damage resulting from a sudden or dangerous occurrence. Although the court in *Rosos Litho Supply Corp. v. Hansen* (1984), 123 Ill. App. 3d 290, 462 N.E.2d 566, in a well-written analysis, reasoned that professional malpractice actions are not within the purview of *Moorman*, I believe the carving out of any exception to the *Moorman* rationale should be left to our supreme court. The implications of *Moorman* and its progeny are not without considerable debate among legal writers (see Bertschy, *The Economic Loss Doctrine in Illinois after Moorman,* 71 Ill. B.J. 346 (1983), and Stein, Cottrell & Friedlander, *A Blueprint for the Duties and Liabilities of Design Professionals After Moorman,* 60 Chi.-Kent L. Rev. 163 (1984)) and, as I believe the majority opinion in an effort to distinguish *Rosos* and another important case, *Ferentchak v. Village of Frankfort* (1984), 121 Ill. App. 3d 599, 459 N.E.2d 1085, *appeal allowed* (1984), 101 Ill. 2d 546, rather than declining to follow them, adds additional confusion to the subject, I concur only in the result reached by the majority.