FENCE RAIL DEVELOPMENT CORPORATION, Plaintiff-Appellee, v. NELSON & ASSOCIATES, LTD., Defendant-Appellant.

Second District   No. 2—87—0943

Opinion filed August 24, 1988.

Marmarie J. Kostelny, of Zimmerman & Smith, of Elgin (Robert William Smith, of counsel), for appellant.

Law Office of Glenn R. Gaffney, of Glendale Heights (Glenn R. Gaffney, of counsel), for appellee.

JUSTICE INGLIS delivered the opinion of the court:

Fence Rail Development Corporation (builder) contracted with Nelson & Associates, Ltd. (architect), for architectural drawings for a single-family residence to be constructed in Naperville. Builder requested plans based on a "Georgian" style house. However, architect furnished initial drawings at the time the foundation was to be poured for a "Brookside" foundation. Builder sued architect in negligence for failure to properly perform his work in a professional manner. Architect counterclaimed for unpaid fees. A bench trial was held in which the court found for builder and entered judgment for $9,506.43 on the complaint. The trial court found for the architect on the counterclaim

and entered judgment for $1,103.85 for unpaid fees. Only the judgment as to builder's complaint was appealed. We reverse.

Builder is an Illinois corporation and in the business of building single-family residences. Builder is owned and operated by Thomas W. Mitz (Mitz), who has 41 years of experience in the construction business. Builder has built between 200 to 250 residences since 1980 of which approximately 100 were built in the City of Naperville, Illinois.

Architect is a professional corporation owned and operated by Walter E. Nelson (Nelson). Architect retained all the original plans for builder's homes. For each of architect's revisions of builder's homes, architect would charge a royalty fee and/or a fee for time spent by architect on the revisions. Besides Nelson, architect employed three draftsmen and a secretary.

On March 26, 1986, builder verbally agreed with David and Rita Kane to construct a residence at 1609 Kirby Court in Naperville, Illinois, and accepted a check from the Kanes for $1,000 to preserve the lot and begin work on the design. The Kanes contracted for builder's Georgian II style home with a rear sunroom and other minor modifications. On April 3, 1986, builder and the Kanes executed a written construction agreement.

Mitz then met with Nelson to obtain architect's architectural services relating to the modifications of builder's Georgian II style plans. Mitz and Nelson discussed the style and design of the home builder wanted, and Nelson made notations and markings on an existing Georgian style house plan. Nelson knew that builder's order was for a Georgian style home with a rear addition. Architect's fee for this service was $1,500 plus expenses. At the same meeting, Mitz and Nelson also informally discussed a Brookside style house. The word "Brookside III" was written and then scratched out from the Georgian foundation plan which was present at their meeting. Nelson knew builder's current order was not for a Brookside style house. Nelson admitted that there was confusion in his office as to whether this job was for a Brookside home or a Georgian home.

On April 17, 1986, builder received a building permit from the City of Naperville to build the Georgian style home for the Kanes at 1609 Kirby Court. Within the following week plaintiff had the subject lot excavated. During the last two weeks of April and the first week of May 1986, Mitz contacted architect's office every two to three days for the sole purpose of obtaining foundation plans. Mitz stopped by Nelson's office about six times and called another six times during that interval. Mitz personally spoke with Nelson once or twice about his need for foundation plans. It had been raining, and Mitz was con-

cerned that the walls of the excavation would collapse before the concrete foundation could be poured. Nelson did not recall these conversations or know if Mitz had been speaking with any other personnel of architect's office.

About May 7, 1986, Nelson informed Mitz that he would "redline" two sets of drawings which could be used to pour the concrete foundation. Nelson does not recall that conversation or any of the other conversations and events relating to the subject job. Nelson does not deliver red-lined drawings for construction purposes as part of his usual and customary procedure. On May 8, 1986, Nelson's secretary informed Mitz that the foundation drawings were ready. Mitz contacted Elliot Construction Company to have a concrete crew ready at the jobsite the following day.

On the next day, Mitz drove to defendant's office and requested the foundation drawings for the subject job. Defendant's secretary handed Mitz a brown, sealed envelope. Mitz immediately drove the envelope to the jobsite and handed it to the concrete crew superintendent. Inside the brown envelope were two identical red-line drawings which had been prepared by Nelson. The drawings contained the rear sunroom addition and other modifications requested; however, Nelson's red lines were drawn on a Brookside foundation plan instead of a Georgian foundation plan. Nelson recalls preparing red-lined foundation plans with a rear addition for the job but does not recall what he did with them. The Brookside style foundation is two feet shorter than the Georgian style foundation.

Nelson could not recall ever preparing a Brookside style plan with a rear addition similar to this job. Mitz stated that he had never before built a Brookside style home with a rear addition.

The concrete crew poured the foundation in compliance with architect's foundation plans. Mitz discovered the inaccurate foundation dimension while measuring for steel work. Mitz notified architect's draftsman of the mistake because Nelson was out of town. Mitz also informed the Kanes of the short foundation and offered numerous alternative resolutions. The Kanes refused all alternative resolutions and held plaintiff to strict compliance with their contract.

Mitz then consulted with Mr. Elliot and Mr. Nielsen from Elliot Construction Company and concluded that the following had to be done:

"(a) one wall of the foundation had to be sawed off by a 'concrete saw cutting outfit';

(b) that wall of the foundation had to be broken up and broken away;

(c) the broken concrete had to be 'hauled off to the dump';

(d) the excavation had to be 'raked';

(e) new footings and a foundation wall had to be poured and 'pinned' to the existing structure;

(f) miscellaneous modifications to the existing foundation had to be made in order to make it conform to the Georgian style plan."

The procedures used by builder were the most cost-effective way to alleviate the problem and still conform to plaintiff's requirements under the Kane contract.

On June 5, 1986, architect delivered final plans to builder. The final plans conformed to the parties' understanding of what was required by architect.

At the close of builder's case, architect moved for a directed finding arguing that builder had failed to establish a duty which would give rise to negligence and failed to present evidence of the expert testimony of the standard of care. The trial court denied architect's motion. During the course of the trial, architect presented evidence in support of its affirmative defenses of comparative negligence and failure to mitigate damages.

The court entered judgment against architect on the complaint for $9,506.43 with a setoff of $1,103.85 due to architect's uncontested counterclaim. The trial court found that builder proved its case by a preponderance of the evidence, builder had the right to rely on the professional expertise of architect, and the expenses incurred by builder were reasonable and proper.

■ On appeal, architect first contends that when an issue in litigation is the alleged professional negligence of the defendant, the plaintiff must establish an appropriate standard of care against which the defendant's conduct may be measured and evaluated. Defendant argues that the question of whether a professional has exercised a reasonable degree of care and skill is one of fact and the standard of care against which the conduct will be measured must generally be established through expert testimony. (*Schmidt v. Hinshaw, Culbertson, Moelmann, Hoban & Fuller* (1979), 75 Ill. App. 3d 516, 522.) Defendant cites *Schmidt* but ignores the comment in *Schmidt* where the court explains that where professional negligence is so grossly apparent that a layman would have no difficulty in appraising it as where the record discloses such an obvious, explicit, and undisputed breach of duty, expert testimony would not be required. 75 Ill. App. 3d at 522.

The record before us clearly shows an agreement for "Georgian"

style plans and delivery of foundation plans for a "Brookside" home. It does not take a degree in architecture to determine the error. Though not cited by either of the parties, we find the case of *Rosos Litho Supply Corp. v. Hansen* (1984), 123 Ill. App. 3d 290, to be instructive. Faced with the same argument by a defendant architect that the standard can be established only by expert testimony, which the plaintiff failed to present, the appellate court in *Rosos* held that an architect's tort duty can be defined by reference to his particular employment agreement. (123 Ill. App. 3d at 299.) Thus instructed, we hold that the record demonstrates the standard of care applicable to architect was sufficiently established, and further, the breach of duty was also supported by the record.

We note that the cases cited by defendant say "usually" or "generally" the conduct must be measured by a standard established by expert testimony. (*Lebrecht v. Tuli* (1985), 130 Ill. App. 3d 457, 471; *Schmidt*, 75 Ill. App. 3d at 522.) They do not say "always." The case before us, supported by *Rosos*, clearly is a reasonable exception to the general requirement.

Defendant next contends that the damages awarded in the present case are barred under the holding of *Moorman Manufacturing Co. v. National Tank Co.* (1982), 91 Ill. 2d 69, because *Moorman* prohibits damages for economic loss, and the damages proved in the instant case were economic losses as defined by *Moorman*. We agree.

In *Moorman,* our supreme court held that economic losses could not be recovered in strict liability (91 Ill. 2d at 81) or negligence (91 Ill. 2d at 88). (See also *Foxcroft Townhome Owners Association v. Hoffman Rosner Corp.* (1983), 96 Ill. 2d 150, 155-57; *Redarowicz v. Ohlendorf* (1982), 92 Ill. 2d 171.) However, the court noted that it had previously allowed the recovery of economic loss "where one who is in the business of supplying information for the guidance of others in their business transactions makes negligent representations." *Moorman,* 91 Ill. 2d at 88-89, citing *Rozny v. Marnul* (1969), 43 Ill. 2d 54.

This court has, on two previous occasions, addressed the question of whether economic losses could be recovered against an engineer for negligent design. *Bates & Rogers Construction Corp. v. North Shore Sanitary District* (1984), 128 Ill. App. 3d 962; *Palatine National Bank v. Charles W. Greengard Associates, Inc.* (1983), 119 Ill. App. 3d 376.

In *Palatine National Bank*, the plaintiffs, who were land developers, sued the defendant, an engineer, for the negligent design of a drainage system. (119 Ill. App. 3d at 378.) This court held that such an action was properly dismissed under *Moorman*. (119 Ill. App. 3d at

380.) In so doing, the court identified as a product "the design and construction of a storm and surface water removal system." (119 Ill. App. 3d at 380.) The court further noted that the only damages sought related to lost profits, expenses incurred to cure the problem, depreciation in the value of the premises and attorney fees.

In *Bates & Rogers*, this court specifically stated that the issue it was addressing was "whether the economic loss doctrine of [*Moorman*] bars the suit of a contractor against an architect/engineer where there is no contract between them, and where the contractor claims the architect/engineer was negligent in the design and administration of a project under construction." *Bates & Rogers Construction Corp.*, 128 Ill. App. 3d at 963.

In holding that plaintiffs could not recover economic losses, *Bates & Rogers* distinguished *Rosos Litho Supply Corp. v. Hansen* (1984), 123 Ill. App. 3d 290, where the Illinois Appellate Court for the First District held that *Moorman* did not bar damages for economic loss in a malpractice case brought against an architect. In *Bates & Rogers*, we found that the damage suffered by plaintiffs was their "expectation interest" that they would successfully complete performance of the contract, and that defendant would not hinder them in performance of their contract. (*Bates & Rogers Construction Corp.*, 128 Ill. App. 3d at 975.) In this court's view, such an interest was one which was meant to be protected by the law of contract. (128 Ill. App. 3d at 975.) We therefore determined that damages for economic losses were prohibited under *Moorman*. 128 Ill. App. 3d at 976-77.

In the instant case, we find that the interest which builder is attempting to protect is one which is similarly to be protected in contract. Builder is attempting to recover damages which came about as the result of architectural plans which did not meet contractual requirements. While it is conceivable that builder might not have been able to recover in contract, such a possibility does not change the nature of the interest which plaintiff attempts to protect. We also find that plaintiff's complaint did not allege either fraud or negligent misrepresentation by a professional. Thus, the complaint did not fall within the exceptions noted in *Moorman*. (See 91 Ill. 2d at 88-89; see also *Bates & Rogers*, 128 Ill. App. 3d at 977 (Reinhard, J., specially concurring) (*Moorman* is applicable to all negligence cases, except those based in intentional false misrepresentation and negligent representations in the context of *Rozny*).) Consequently, we hold that under *Moorman* and our interpretations thereof, builder was barred from recovering the damages which were awarded.

In accordance with the foregoing discussion, we hold that the

damages awarded in this case were barred by *Moorman*. Because this issue is dispositive of the case, we need not consider defendant's remaining issues.

■ We finally consider a motion to add counts II and III to the complaint to conform to the proofs. This motion was made after the parties submitted their briefs in this appeal. Architect objects, claiming prejudice will result. However, architect raised the *Moorman* doctrine as a defense for the first time on appeal. We therefore believe remanding for an opportunity to amend the pleadings and for rehearing is justified because the basis for this opinion was considered for the first time on appeal and because of the state of the law under *Moorman*. (*Grass v. Homann* (1984), 130 Ill. App. 874, 879.) The cause is remanded to give builder an opportunity to offer amendments to the complaint and for retrial. *Brumley v. Touche Ross & Co.* (1984), 123 Ill. App. 3d 636, 644; 107 Ill. 2d R. 362(f).

The judgment is reversed and the cause remanded.

Reversed and remanded.

NASH and WOODWARD, JJ., concur.