2024 IL App (1st) 230133

No. 1-23-0133

Opinion filed September 27, 2024

FIFTH DIVISION

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

| | | |
|---|---|---|
| ADRIAN SMITH + GORDON GILL ARCHITECTURE LLP, | ) ) ) | Appeal from the Circuit Court of Cook County. |
| Plaintiff-Appellee, | ) ) | |
| | ) | No. 18 L 006287 |
| v. | ) ) | Honorable |
| CHICAGO SHAKESPEARE THEATER, | ) ) | James E. Snyder, Judge, presiding. |
| Defendant-Appellant. | ) | |

JUSTICE MITCHELL delivered the judgment of the court, with opinion.
Presiding Justice Mikva and Justice Navarro concurred in the judgment and opinion.

**OPINION**

¶ 1    Defendant Chicago Shakespeare Theater appeals the circuit court's order granting plaintiff Adrian Smith + Gordon Gill Architecture LLP's motion for summary judgment on defendant's counterclaim. The counterclaim alleged that plaintiff breached an owner-architect agreement by failing to provide architectural services with "professional care" in connection with the installation of limited use elevators. At issue is whether the circuit court erred in entering judgment as a matter of law in favor of plaintiff on defendant's counterclaim because the alleged breach of contract claim did not require expert testimony and, even if it did, defendant's expert was competent to testify on the applicable standard of care. For the following reasons, we affirm.

¶ 2                                    I. BACKGROUND

¶ 3       The following uncontested facts are taken from the pleadings, depositions, admissions, and supporting affidavits of record. Defendant Chicago Shakespeare Theater is a theater company located in Chicago, Illinois. In 2013, defendant initiated plans to re-purpose its outdoor Chicago Skyline Stage at Chicago's Navy Pier into a flexible indoor theater called The Yard. The Yard would include nine mobile towers, each containing three levels of seating, that could be rearranged to meet the needs of each production. To design The Yard, defendant hired CharcoalBlue LLP, a London-based theater design consultancy company. However, because CharcoalBlue did not have a license to practice architecture in the United States, defendant also hired plaintiff Adrian Smith + Gordon Gill Architecture LLP.

¶ 4       In April 2014, plaintiff and defendant entered into a sub-consultant agreement under which plaintiff agreed to provide certain design services for the lobby pavilion and exterior enclosure and serve as the architect of record for The Yard project. Given the project's limited budget, in late 2014 the parties explored using limited use / limited application elevators for The Yard. The limited use elevators would be "Orion" models provided by Savaria Corporation. In December 2014, plaintiff informed CharcoalBlue that plaintiff had met with Savaria's local representative, Access Elevator Inc., and had been informed that the maximum capacity of a limited use elevator is "approximately (5)-(6) persons" and that "[limited use] elevators are not fast," so "[i]t was estimated that a round trip for one floor in the lobby would be approximately one (1) minute" or, if both elevators are running, "approximately fifty (50) persons in about five (5) minutes."

¶ 5       In March 2015, the general contractor for The Yard project at that time, James McHugh Construction Co., expressed concern over the use of the limited use elevators:

"Our elevator contractors have expressed concern that the [limited use elevators] as shown on the project may not meet code and may not pass review by the Elevator Bureau. They are also concerned that the elevators as shown may not be ADA compliant. The bidders noted that the [limited use] elevators specified are not designed to be in continuous use as a conventional elevator. *** Given the location and layout of these elevators, the elevator manufacturer has expressed concern that these elevators would be used improperly, therefore leading to malfunction and damage to the elevators."

¶ 6    In response, plaintiff stated that "[w]e were able to catch up to the [limited use elevator] representative that we all met with back in December" and that "[h]e was confident that the systems will perform as they are intended in their current configuration for the theater and lobby." Savaria stated that while "50 trips a day" was "heavy use" and "100 trips a day" was "excessive use," "[w]e have Orion's in service with excessive use and running fine because the dealer and owners understands they need monthly maintenance and will require frequent consumable parts such as slide guides, ropes etc."

¶ 7    On November 1, 2015, plaintiff and defendant entered into a written owner-architect agreement for plaintiff to provide certain architectural services for The Yard project. The agreement acknowledged that plaintiff had already provided design services for the project, and that all services performed before February 25, 2015 were to have been performed with "professional care":

"Architect and Architect's consultants listed in this Agreement provided services under letters of intent, preliminary agreements and oral agreements for the Conceptual Design, Schematic Design, Design Development Documents and all other services prior to

the February 25, 2015 Owner approval of the Design Development Documents. All such services were to have been performed with professional care and are represented to Owner as completed and paid for by Owner. All services thereafter are deemed provided under this Agreement."

The agreement also stated plaintiff's standard of care for all services provided after February 25, 2015:

"The Architect shall perform its services consistent with the professional skill and care ordinarily provided by architects practicing in the same or similar locality under the same or similar circumstances. The Architect shall perform its services as expeditiously as is consistent with such professional skill and care and the orderly progress of the Project."

¶ 8 Plaintiff ultimately specified two limited use elevators to serve as lobby elevators and two limited use elevators to operate in the mezzanine. Access Elevator was retained as a subcontractor for the limited use elevators' installation. On The Yard's opening night in 2017, all four limited use elevators failed to operate correctly, trapping patrons inside the elevators. While some of the problems were caused by the improper installation of two of the limited use elevators, even after the installation issues were fixed, all the limited use elevators continued to malfunction. Defendant hired an elevator consultant and, following the consultant's recommendations, replaced the limited use elevators with a hydraulic elevator system.

¶ 9 In 2018, plaintiff sued defendant for breach of contract, account stated, quantum meruit, conversion, and fraud, seeking payment on allegedly unpaid invoices related to replacing the limited use elevators and a 2015 reimbursable expense. Defendant filed a counterclaim for breach of contract, alleging that plaintiff owed defendant a duty of professional care in its architectural

services and that plaintiff breached its duty by specifying limited use elevators that could not meet defendant's performance requirements.

¶ 10 In discovery, defendant disclosed two expert witnesses: Dennis Olson and Adam Tymowski. Ill. S. Ct. R. 213(f)(3) (eff. Jan. 1, 2018). Olson would provide testimony on plaintiff's performance related to specification of the limited use elevators while Tymowski would provide testimony regarding damages. Plaintiff disclosed five expert witnesses. Four of them would provide testimony that plaintiff "met the prevailing standard of care in interfacing with [defendant] regarding [defendant's] selection of [limited use elevator] product for this project." Defendant disclosed Olson and Elliott Dudnik as rebuttal expert witnesses, with Dudnik expected to provide testimony that plaintiff failed to meet its standard of care.

¶ 11 Plaintiff moved for summary judgment on defendant's counterclaim on the ground that defendant allegedly did not disclose an expert competent to establish that plaintiff breached its standard of care. The circuit court granted plaintiff's motion for summary judgment, concluding that "[t]o the extent that Olson is qualified, he has not offered an opinion which constitutes competent evidence of a breach of the standard of care."

¶ 12 In a bench trial on the plaintiff's claims related to its unpaid invoices, the circuit court ruled in favor of defendant regarding the unpaid invoices for replacing the limited use elevators but held that defendant must pay one unrelated 2015 invoice. Defendant filed a motion to reconsider the circuit court's order granting summary judgment on defendant's counterclaim, which the circuit court denied. This timely appeal followed. Ill. S. Ct. R. 303(a)(1) (eff. July 1, 2017).

¶ 13                                II. ANALYSIS

¶ 14    Defendant argues that the circuit court erred in granting plaintiff's motion for summary

judgment because (1) expert testimony was not necessary to support defendant's counterclaim for

breach of the owner-architect agreement; and (2) if such testimony was necessary, its expert was

competent to testify that plaintiff breached its standard of care under the owner-architect

agreement. A circuit court's grant of summary judgment is reviewed *de novo*. *JPMorgan Chase*

*Bank, N.A. v. Earth Foods, Inc.*, 238 Ill. 2d 455, 461 (2010). Summary judgment is proper only "if

the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that

there is no genuine issue as to any material fact and that the moving party is entitled to a judgment

as a matter of law." 735 ILCS 5/2-1005(c) (West 2022).

¶ 15                                     A.

¶ 16    Here, the owner-architect agreement obligated plaintiff to perform its services with

"professional care." In cases addressing design professionals, Illinois courts have held that the

scope of the standard of care is determined by the language of the contract. *Thompson v. Gordon*,

241 Ill. 2d 428, 449 (2011) ("Pursuant to *Ferentchak*, the scope of defendants' duty is defined by

the contract between defendants and WDC."); see also *Ferentchak v. Village of Frankfort*, 105 Ill.

2d 474, 482 (1985) ("The degree of skill and care required of Hamilton in this situation is

dependent on his contractual obligation to Krusemark."); *Mississippi Meadows, Inc. v. Hodson*,

13 Ill. App. 3d 24, 26 (1973) ("The duty of an architect depends upon the particular agreement he

has entered with the person who employs him ***.").

¶ 17    Under the owner-architect agreement, a duty of "professional care" applies to all services

performed by plaintiff before February 25, 2015. Defendant argues that because the limited use

elevators were selected and vetted prior to February 25, 2015, this is the relevant duty of care for its breach of contract counterclaim. The duty of "professional care" required by the owner-architect agreement is equivalent to the common law professional standard of care. This common law standard requires "the use of the same degree of knowledge, skill and ability as an ordinarily careful professional would exercise under similar circumstances." *Advincula v. United Blood Services*, 176 Ill. 2d 1, 23 (1996).

¶ 18     Expert testimony is generally required to "establish both (1) the standard of care expected of the professional and (2) the professional's deviation from the standard." *Jones v. Chicago HMO Ltd. of Illinois*, 191 Ill. 2d 278, 295 (2000); *Advincula*, 176 Ill. 2d at 24. However, expert testimony is not required "where the professional's conduct is so grossly negligent, or the procedure so common, that the jury can readily appraise it without the need for expert testimony." *Studt v. Sherman Health Systems*, 2011 IL 108182, ¶ 20. Indeed, Illinois courts have not always required expert testimony to establish an architect's standard of care. In *Rosos Litho Supply Corp. v. Hansen*, the appellate court held that an architect's standard of care was defined by contract: "an architect's tort duty can also be defined by reference to his particular employment agreement." 123 Ill. App. 3d 290, 299 (1984), *abrogated on other grounds*, *2314 Lincoln Park West Condominium Ass'n v. Mann, Gin, Ebel & Frazier, Ltd.*, 136 Ill. 2d 302 (1990). There, the architect had an express contractual obligation to hire and to receive reports from a soil engineer. *Id.* Similarly, in *Fence Rail Development Corp. v. Nelson & Assoc.*, the appellate court again reiterated that expert testimony is not required. 174 Ill. App. 3d 94, 98-99 (1988). There, a builder sued an architect for alleged negligence in supplying incorrect house foundation plans. *Id.* at 95. The contract required "Georgian" style plans, and instead the architect delivered foundation plans for

a "Brookside" style house. *Id.* The appellate court held "[i]t does not take a degree in architecture to determine the error." *Id.* at 99.

¶ 19    In contrast, the owner-architect agreement here is silent on the design and specification of elevators, but it does require the architect to meet a professional standard of care. Defendant's counterclaim rests exclusively on an alleged breach of the architect's duty of "professional care": "[Plaintiff] breached the standard of professional care by specifying [limited use] elevators that could not meet Chicago Shakespeare's performance requirements, and by failing to include Chicago Shakespeare's performance requirements in its design specifications." Because the owner-architect agreement does not specify a particular type of elevator, the alleged breach of the duty of "professional care" in the agreement can only be established with expert testimony.

¶ 20    The fact that the elevators failed, on its own, does not establish a breach of an architect's standard of care. Further, a situation where the architect's standard of care allows (or does not allow) for specification of "limited use / limited application" elevators is not a matter of common knowledge. Compare *Walski v. Tiesenga*, 72 Ill. 2d 249, 257 (1978) (negligence of a medical practitioner causing x-ray burns or leaving sponges or instruments inside someone's body after surgery is within the common knowledge of a lay person), with *Wilson v. University of Chicago Medical Center*, 2023 IL App (1st) 230078, ¶ 25 ("[T]he issue of whether the clinic physicians were negligent is not within a layman's common knowledge and requires expert testimony regarding the general standards for acquiring transferred patients' medical records and charts."), *Mielke v. Condell Memorial Hospital*, 124 Ill. App. 3d 42, 49 (1984) ("In a complex situation such as is present here, involving the pharmacological effects of a drug regimen, a layperson cannot be expected to determine without the aid of expert testimony what standard should be used to judge

the hospital's conduct."), and *Chicago College of Osteopathic Medicine v. George A. Fuller Co.*, 719 F.2d 1335, 1346 (7th Cir. 1983) ("The standard of care ordinarily expected of architects in executing their obligations is generally not a 'matter of common knowledge' " such that "[t]o properly assess [the architects'] actions, the jury needed a witness with an expertise in the field of architecture to explain the nature of the judgment calls [the architects] made and the accuracy to be expected.") (applying Illinois law). Based on the alleged breach of the contractual duty to exercise "professional care" in the design and selection of limited use elevators, the circuit court did not err in concluding that the law required expert testimony to establish the parameters of the architect's standard of care.

¶ 21 Defendant argues that this conclusion is contradicted by the circuit court's findings on plaintiff's breach of contract claim, a claim which arises from the same owner-architect agreement as defendant's counterclaim for breach of contract. In its judgment after a bench trial, the circuit court concluded that plaintiff had breached the owner-architect agreement by specifying the limited use elevators, and that no expert was necessary:

"I believe that the plaintiff breached the contract when it recommended or proceeded forward with the [limited use elevator] application, limited use, limited applications solution.

\*\*\*

By a preponderance of evidence, I find that the elevators were not fit for the intended purpose, and the recommendation of them constitutes a breach of the performance criteria of services under the contract. I believe that no expert is required to reach the finding that they did not meet the basic specification."

Significantly, the circuit court reached this conclusion after hearing evidence on a claim on which plaintiff bore the burden of proof: the action on the unpaid invoices required plaintiff to prove its own performance under the contract as a condition precedent to recovery. And plainly, the circuit court's ruling in this regard rested on a failure in plaintiff's proof:

"Testimony from the plaintiff's own architecture's employees indicated that they did not know, and, in fact, in the trial today, do not know what constitutes an elevator trip, and it is not to me a red herring that is to me remarkable to the extent to which that testimony is worthy of belief, it supports the allegations that the standard of care, the contract delivered of design and services was breached.

\*\*\*

An architecture firm conducting design for a Theater with elevators that do not have an opinion about what constitutes an elevator trip cannot have delivered the contract design service."

Deficiencies in plaintiff's proof at trial on its unpaid invoice claim do not excuse defendant's failure to make a *prima facie* case on its counterclaim on which defendant bore the burden of proof. The circuit court explained as much after the trial:

"It was not possible, and I entered summary judgment that it was not possible for the defendant to prove their counterclaim of professional negligence based on a breach of the standard of care, based on the type of experts they disclosed at that time, and it was not possible, therefore, for them to [] "seek affirmative damages" based on a claim of a proximate cause of that breach, but it is possible to find, without expert testimony, that the plaintiff did not provide the contracted service."

Because defendant did not disclose an expert to opine on the architect's standard of care in connection with the breach alleged (an alleged breach not tied to a requirement of the contract other than the duty to provide "professional care"), the circuit court did not err in entering judgment as a matter of law in favor of plaintiff on defendant's counterclaim.

¶ 22                                    B.

¶ 23    Defendant challenges the circuit court's conclusion that plaintiff's expert, Dennis Olson, had "not offered an opinion which constitutes competent evidence of a breach of the standard of care." The admissibility of expert testimony is governed by Illinois Rule of Evidence 702:

> "If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise." Ill. R. Evid. 702 (eff. Jan. 1, 2011).

Thus, the rule requires that (1) the proffered expert testimony be helpful to the trier of fact in understanding a technical or complicated fact; and (2) the expert be qualified to give the testimony sought. An expert's opinion assists the factfinder when it offers knowledge and experience that the average person generally lacks and which is "beyond the ken of the average juror." (Internal quotation marks omitted.) *Compton v. Ubilluz*, 353 Ill. App. 3d 863, 867 (2004). The decision whether a witness may testify as an expert is entrusted to the trial court's discretion. *People v. Nelson*, 235 Ill. 2d 386, 430-31 (2009) ("It is within the court's discretion to decide whether an expert witness is qualified to testify in a particular subject area and whether the proffered testimony is relevant.").

¶ 24    Again, the circuit court's summary judgment ruling stemmed from its conclusion that "[t]o the extent Olson is qualified, he has not offered an opinion which constitutes competent evidence of the breach of the standard of care." In subsequent proceedings, the circuit court explained that its earlier summary judgment ruling was based on the "type" of expert disclosed, a lack of "admissible evidence," and absence of a "disclosed opinion of breach."

¶ 25    The parties dispute Olson's qualification because he is not an architect. There is, however, no requirement in Illinois law that an expert opining on an architect's standard of care necessarily be an architect. *Cf. Thompson v. Gordon*, 221 Ill. 2d 414, 429-34 (2006) (holding that expert witness was not required to have civil engineering license to testify as to engineer's standard of care). There is no formula for how an expert acquires specialized knowledge or experience. *Id.* at 428-29. Unlike medical malpractice cases where statute imposes express requirements as to standard of care experts, 735 ILCS 5/8-2501 (West 2022), in most other cases, an expert need not be licensed or formally trained. *Lee v. Chicago Transit Authority*, 152 Ill. 2d 432, 459 (1992) ("Formal academic training or specific degrees are not required to qualify a person as an expert; practical experience in a field may serve just as well to qualify him."). Experience alone can serve as the bases of the expert's knowledge. *People v. Clifton*, 342 Ill. App. 3d 696, 707 (2003).

¶ 26    Here, Olson has a wealth of experience working with elevators and many years of experience working with architects in elevator projects. He has "been retained by architects to provide consulting services." He has worked on major construction projects including 1 World Trade Center. The real issue is not with Olson's qualifications, but rather with the form and substance of his disclosed opinions.

¶ 27    Olson disclosed his opinions related to plaintiff's performance under the owner-architect agreement, but never once referenced the architect's standard of care or explained how the architect here failed to conform to the standard of care.

> "Based upon the evidence provided in this matter, I conclude the following:
>
> - The Limited Use / Limited Application elevators approved by [plaintiff] and installed by Access were incapable of meeting the stringent operational requirements provided by [defendant].
>
> - [Plaintiff] knew or should have known that the [limited use] elevator performance capabilities cited by Savaria / Access were inaccurate and based upon a repeated pattern of miscommunicated and / or misunderstood assessments of [defendant's] [limited use] elevators performance requirements.
>
> - [Plaintiff] failed to take any reasonable measures to assure the [limited use elevators] as proposed by Access / Savaria were adequate in their inherent design and known operational limitations were capable of meeting [defendant's] stringent operational requirements.
>
> - No evidence has been provided demonstrating that in response to the numerous issues identified concerning the [limited use] elevators limited operational capabilities, that [plaintiff] discussed with, or retained the services of a qualified elevator consultant or consulting firm in determining the [limited use elevator's] fitness for The Yard project."

Olson's disclosed opinions say nothing about the standard of care. Defendant cannot meet its burden to establish a standard of care "by merely presenting expert testimony which offers an

opinion as to correct procedure or which suggests, without more, that the witness would have conducted himself differently than [plaintiff]." *Advincula*, 176 Ill. 2d at 24. A standard of care expert must base his opinion on "recognized standards of competency in his profession." *Id.*

¶ 28 Olson's opinions stand in stark contrast to plaintiff's expert disclosures in which four experts expressly and repeatedly tied their opinions to the standard of care. Defendant's attempt to rely upon selected testimony from plaintiff's experts to establish plaintiff's breach is unavailing because, when considered in their full context, each of these witnesses was of the undeniable opinion that plaintiff had not breached the standard of care. Against this backdrop, the circuit court did not abuse its discretion in concluding that defendant's expert had offered no opinion on the breach of the standard of care.

¶ 29                                III. CONCLUSION

¶ 30 The judgment of the circuit court of Cook County is affirmed.

¶ 31 Affirmed.

No. 1-23-0133

---

*Adrian Smith v. Chicago Shakespeare Theater*, **2024 IL App (1st) 230133**

---

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Cook County, No. 2018-L-006287; the Hon. James E. Snyder, Judge, presiding. |
| | |
| **Attorneys for Appellant:** | Michael F. LeFevour, of Kirkland & Ellis LLP, of Chicago, for appellant. |
| | |
| **Attorneys for Appellee:** | Robert T. Boylan, Thomas B. Orlando, Douglas J. Palandech, and Eric J. Shukis, of Foran Glennon Palandech Ponzi & Rudloff PC, of Chicago, for appellees. |